READ (SIMMS v.). See Case No. 12.870.

READ (STEVELIE v.). See Case No. 13,-389.

READ (STODDARD v.). See Case No. 13,-470.

READ (UNITED STATES v.). See Cases Nos. 16,125, 16,126.

## Case No. 11,611.

### READ v. WILKINSON.

[2 Wash. C. C. 514.] [1]

Circuit Court, D. Pennsylvania. April Term, 1811.

BILLS OF EXCHANGE—NOTICE—CONDITIONAL ACCEPTANCE — LIMITATION OF ACTIONS — NEW PROMISE—CONDITION.

1. The want of funds in the hands of the drawee of a bill of exchange. renders notice to the drawer of the non-acceptance or non-payment unnecessary.

2. Where a bill of exchange is accepted conditionally, the holder, who would charge the acceptor, must show performance of the condition.

3. Any offer on the part of the debtor operates to remove the bar of the statute of limitations, which fairly interpreted amounts to a promise to pay, or to an acknowledgment of the debt, or of some debt; as if the debtor says, "he will pay, if the demand is proved;" or a promise to account, though he adds, "that he owes nothing."

[Cited in Davis v. Van Zandt, Case No. 3,-656.]

[Cited in Knapp v. Runals, 37 Wis. 141.]

4. If any thing is added which negatives a promise of payment, or an acknowledgment of a debt, it must be considered as qualifying every expression; as if A. says he owes the debt. "but will not pay it, and will avail himself of the statute of limitations."

5. If a promise to pay a debt, barred by the statute of limitations, is conditional, the remedy for the recovery of the debt is not revived, unless the condition is performed.

[Cited in Mattocks v. Chadwick, 71 Me. 315.]

The action was founded, amongst other items of account, upon a bill of exchange for six hundred and twenty pounds, drawn by the defendant on P. Noland, February 2nd, 1790, in favour of the plaintiff, dated in Kentucky, which was never protested; but Wilkinson was informed that it was not paid. He afterwards paid a part of it, for which a receipt was endorsed. He afterwards by letter to the plaintiff, plainly intimated that he was to furnish the drawee with funds to pay the bill. Secondly: upon a bill drawn by General Moyland of Philadelphia, on the defendant, in Kentucky, in 1790, in favour of the plaintiff, and accepted by endorsement,

"on the terms mentioned in a note of the drawee."

The plea principally relied upon, was the act of limitations, to which the plaintiff replied, a new promise within six years before action. To support the replication, the plaintiff relied upon a letter addressed by the defendant to the plaintiff, dated the 19th of April, 1805 (this action having been entered in 1808), in which he states that he had been prevented from forwarding his papers to Mr. Ingersoll, for the final adjustment of the plaintiff's claim, but that he will immediately do so; and then adds. that "he shall hold himself bound, in honour and law, to abide his decision." On the 22d of the same month, he writes to Mr. Ingersoll, and encloses him a sealed packet containing his papers, and also an arbitration bond, executed by himself, submitting the dispute to his (Mr. Ingersoll's) arbitration. He requests Mr. Ingersoll to obtain a similar bond from the plaintiff; and, in that event, to break the seal of the packet, and proceed to the adjustment. But if the bond is not given by the plaintiff, he, Mr. Ingersoll, is then to return the packet with the seal unbroken. This letter was shown to the plaintiff, who declined the arbitration. General Wilkinson came to Philadelphia with his family, in 1796, and remained there some months.

It was contended, by Messrs. Dallas and Ingersoll. for the defendant, that the plaintiff could not support his action for the six hundred and twenty pounds bill, because it was not protested; nor upon the defendant's acceptance of Moyland's bill, because it was conditional, and the plaintiff had not shown that the condition was performed. As to the act of limitations, they insisted that the letters relied upon, did not amount to a promise to revive the action, and did not get rid of the plea.

Mr. Levy, for plaintiff. contended, as to the bill for six hundred and twenty pounds, that no protest was necessary: First, because it appeared in evidence that the plaintiff had no funds in the hands of the drawee; secondly, that he had paid part of that bill; and. thirdly, that he had afterwards acknowledged the debt, and promised to send forward funds to pay it.[2] As to Moyland's bill, that the defendant should produce the defendant's note, referred to in the acceptance; if not, it should be taken as absolute. As to the act of limitations, he referred to Salk. 29; Cowp. 548; [Orchard v. Hughes] 1 Wall. [68 U. S.] 75; Bull. N. P. 145, 149; 2 Term R. 760.

WASHINGTON, Circuit Justice (charging jury). As to the objection to the want of protest of the six hundred and twenty pounds bill. the plaintiff is right in his law. The want of funds in the hands of the drawee, the drawer's payment of part of it,

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

[2] See. on this subject. Chit. 101, 102, 68: Baker v. Gallagher [Case No. 768], in this court.

and his subsequent acknowledgment of the debt, and promise to send funds to take it up, are either of them sufficient to dispense with notice and protest.

Secondly; as to Moyland's bill, the defendant is right. It was conditional, and it is incumbent on the plaintiff to show the condition performed.

Thirdly; as to the act of limitations. A promise to pay. within the time prescribed by the act of limitations. has always been held sufficient to remove the bar. and revive the remedy, which is alone defeated by the act of limitations. Although it was once doubted whether a bare acknowledgment of the debt was sufficient to revive the remedy; it was settled long before the Revolution, and we think, rightly, that it was. For an acknowledgment of a debt for a valuable consideration, if not amounting to a promise, is at least evidence of it sufficient to create a debt originally; and if so, it is certainly sufficient to revive the remedy, where that has been defeated by the act of limitations. The decisions in England, particularly of late years, have gone great lengths in construing slight expressions into a promise or acknowledgment. We do not say that we should feel disposed to go so far. As the commercial spirit of that country has increased, the courts have shown great anxiety to remove bars against the payment of just debts. and have discountenanced, as much as possible, the act of limitations, which was once viewed with great favour. We are of opinion, that any offer on the part of the debtor, operating to remove the bar created by that act, should, upon a fair interpretation of the meaning of the party, from all that he has said, amount either to a promise, or to an acknowledgment of the debt, or of some debt. Thus, a promise to pay, if the creditor will prove his demand, is sufficient. A promise to account, though the debtor adds that he owes nothing, may amount to a promise to pay, if it should appear upon the account that any thing is due, for why account, if the debtor does not mean to pay what may be found due? But any thing which is added, going to negative a promise or acknowledgment, must be considered as qualifying every other expression, and as the whole must be taken together, it amounts to a refusal to pay, which can never be construed into a promise to pay; as if the debtor say he owes the debt, but will not pay it, and will take advantage of the act of limitations. See the following cases: 2 Burrows, 1099; 5 Burrows, 2630; 2 Term R. 760. Another rule is perfectly clear: If the promise is conditional, the remedy is not revived, unless the condition is performed. The creditor cannot garble what is said, and so avail himself of the promise, and reject the condition. He must take the promise on the terms offered, or not avail himself of it at all. This latter rule is conclusive of the present cause. The obvious meaning of the defend-

ant's letter of the 19th of April, 1805, strengthened particularly by his letter to Mr. Ingersoll, three days afterwards, and which was shown to the plaintiff, and both should be taken together, is, that the defendant consented to pay what might be found due, provided the plaintiff would execute an arbitration bond, and that Mr. Ingersoll should be the arbitrator. This offer was rejected, and of course the promise amounted to nothing. The replication, therefore, is not supported, and the verdict should be for the defendant upon the plea.

The plaintiff suffered a nonsuit.