Penley v. Waterhouse.

## PENLEY *v.* WATERHOUSE.

The doctrine that a subsequent promise will remove the statutory bar, obtains, not because statutes of limitations, either in this country or England, have so provided, but because such promises have uniformly been held to obviate the effect of such statutes.

Where in an action on a promissory note, the defendant pleaded the statute of limitations, to which the plaintiff replied, averring that since the first day of July, 1851, and before the commencement of this suit, the said defendant admitted that the cause of action still justly subsists, and that the said cause of action does in fact still justly subsist, which averments were denied by the rejoinder of the defendant; and where it did not appear affirmatively from the answer of the defendant, or from his testimony as a witness; and where the defendant asked the court to instruct the jury as follows: "That in order to entitle the plaintiff to recover on the ground, that the cause of action still justly subsists, the fact that it does justly subsist, must appear from the answer of the defendant, or from his testimony as a witness," which instruction the court refused to give, but instructed the jury, "that the issue formed

by the replication and rejoinder, was immaterial," in which instruction the counsel for the plaintiff acquiesced, and claimed nothing under that issue; *Held,* That under the circumstances, the defendant could not have been prejudiced by the refusal to give the instruction; and that it was not error to refuse it.

In order to revive a debt barred by the statute of limitations, it is not necessary that the promise to pay, should have been made *after* the debt was barred by the statute.

An admission that the debt is unpaid, or a promise to pay, made *before* the debt is barred, and while an action might be maintained upon it, is sufficient to remove the bar of the statute.

Where in an action on a promissory note, the statute of limitations was pleaded, to which the plaintiff replied, a subsequent promise, which was denied by the rejoinder; and where the defendant asked the court to instruct the jury as follows: "That a promise to pay, in order to revive a debt barred by the statute of limitations, must have been made *after* the debt was barred; and that a promise to pay, or an admission that the debt is unpaid, made *before* the debt was barred, and while an action might have been maintained on the note, will not be sufficient to revive the debt," which instruction was refused; *Held,* That the court did not err in refusing the instruction.

Section 1670 of the Code, which provides that causes of action founded on contract, are revived by an admission that the debt is unpaid, as well as by a new promise to pay the same, is but declaratory of the common law rule, as it stood before the enactment of the Code.

Where in an action on a promissory note, the statute of limitations was pleaded, to which the plaintiff replied a subsequent promise, which was denied by the rejoinder; and where the defendant asked the court to instruct the jury as follows: "1. That under the statute of limitations of 1843, a mere admission of indebtedness did not revive a debt barred by the statute; and that if plaintiff relies on a mere admission that the debt is unpaid, such admission must have been made since the Code took effect, viz: July 1, 1851, to be binding on defendant, and entitle the plaintiff to recover. 2. That any admission contained in the letters of the defendant, dated June, 1848, and February 10, 1850, are not evidence in this action against the defendant, to show an admission that the debt is unpaid, or that the cause of action still justly subsists, for the reason that they were made prior to July 1, 1851, when the Code took effect and went in force," which instructions were refused; *Held,* That the instructions were properly refused.

The statute of limitations should not be viewed in an unfavorable light, or as a defence unjust and discreditable, but like all other statutes, should be so construed as to effect the intention of the legislature—that intention being to afford security against stale demands, after the true state of the transaction may be either forgotten, or rendered incapable of explanation.

A party may waive the bar created by the statute, and revive the cause of action, by a subsequent promise.

If this promise is conditional in its character, the plaintiff must show that the condition has happened, else the defendant is not liable.

Penley v. Waterhouse.

The cause of action may be revived, not only by a promise to pay, but also by an acknowledgment of the debt.

If the acknowledgment only goes to the original justice of the debt, it is not sufficient; it must admit its present existence, or that it is due.

The terms of the acknowledgment or promise, are not material, if they clearly and unqualifiedly show a subsisting debt, for which the defendant is liable.

Where there is an acknowledgment of a present indebtedness, the law implies a promise to pay.

Such an acknowledgment, though ever so clear, will not be sufficient, if accompanied with an expressed intention not to pay, or with an intention to insist upon the benefit of the statute. If not accompanied by any such expression of intention, an acknowledgment is sufficient.

The expression of an inability to pay, coupled with an acknowledgment of the debt, does not destroy the acknowledgment, if it is otherwise sufficiently full and unqualified.

Where in an action on a promissory note, the defendant pleaded the statute of limitations, to which the plaintiff replied a subsequent promise, and that the defendant had admitted that the debt was unpaid, which was denied by the rejoinder; and where it appeared from the evidence that the defendant had used the following expressions: "I am disposed to pay my debts, if I had the means,"—"I formerly expected to pay what I owed, but I have not been so fortunate," &c.,—"I would not go to California, but for my eastern debts, and among others, I am indebted to the plaintiff,"—"I expect Penley out, and am selling this land to pay him;" and where it was left to the jury to determine whether these expressions were intended to refer to the debt on which suit was brought, who found for the plaintiff: *Held*, That these expressions were a sufficient acknowledgment or admission of the debt, to remove the bar of the statute; and that it was properly left to the jury to determine whether they applied to the debt on which suit was brought.

Where the question to be determined is one of *intention*, to be gathered from the language used, and from all the circumstances of the case, it is proper to leave it to the jury, under the instructions of the court.

When the promise or acknowledgment relates to a particular debt, the evidence of which is in writing, and is sufficient to revive it, the original claim, with interest, is *prima facie*, the amount due.

### *Appeal from the Linn District Court.*

THE petition in this case, claims to recover on a promissory note, made at Portland, Maine, and dated October 8th, 1844, payable on demand, with interest. The suit was commenced July 9th, 1855.

The defendant, among other defences, pleads the statute of limitations. To this defence, plaintiff replied, *first*, that from the month of May, 1850, until February, 1853, defend-

ant was a non-resident of the state; and *second*, that defendant did within six years next before the first day of July, 1851, undertake and promise to pay said note, and did within that time and afterwards, and before the commencement of this suit, admit that the said note was unpaid, and that the cause of action still justly subsisted.   To the first part of the replication, defendant rejoined, admitting his absence for the time stated, but averring that it was temporary, on business, and that his family and residence during all that time, were in this state; to this there was a demurrer, which was sustained, and from that question defendant appealed to the last term of this court, when the demurrer was overruled, and cause remanded.   To the second part of the replication, defendant rejoined in denial of the promise and admission therein alleged, and upon this issue the parties went to trial.

To sustain the issue on his part, the plaintiff introduced the note sued on, and also certain letters written by defendant to plaintiff, and conversations had by defendant with different persons, the material parts of which are as follows:

In June, 1848, defendant wrote to plaintiff, saying, "I received your letters by the hand of Captain Jordan, and am sorry to have it to say, that I have no means to pay my debt. I am disposed to pay my debts, if I had means, but see no prospect, for I am quite infirm, and have hard work to get a living.   I have been dunned by some of my eastern creditors, previous to receiving your letter, for there is a large amount that you did not get up, viz: (naming some debts), and if they were all offered to me for twenty-five dollars, I could not pay even that small sum, without taking from me the necessaries of life."

On the 10th of February, 1850, he writes: "Captain Penley, Sir, I received a line from you a few days since; in answer I have to say, that I cannot pay you anything at present, for I have been very unfortunate, having had much sickness in my family.   You say you can sell the note there at a great discount.  I am not able to purchase it at any rate, without depriving myself and family of the necessaries of

life, and (that) of course, you would not expect, and if you can sell it to any one there or here, you may. I should like to buy it, but see no prospect of canceling my paper."

To the introduction of these letters, defendant objected; because they were dated and written *before* the note sued on was barred by the statute, and before the taking effect of the Code, which objections were overruled and defendant excepted.

On the first of June, 1854, defendant again writes as follows: " Captain John Penley—Sir: I received a line from you a few days since, and in answer will say, that I formally (firmly or formerly) expected to pay what I owed, but I have not been so fortunate as I anticipated; that I have given up all hopes of being able to pay my debts. I went to California, and endured all the privations and hardships for three years, that I could; was sick and lame, and spent all I made. You insinuate that you know what I have, &c. I am entirely willing you should. I know I have not enough to live on comfortable, and as for adopting the bread and water regimen, you recommend, I do not see fit, having never recommended it to any one yet."

It was also proved that defendant, in the spring of 1850, when about starting for California, stated to witnesses, that he would not go but for his eastern debts, and named the plaintiff among the persons to whom he was indebted, and that he could not safely hold property in his own name. Another witness states, that in November, 1853, defendant acknowledged a deed before him, and said at the time, that he expected Penley out, and was selling the land to pay him. This witness also testifies, that defendant moved to this state in December, 1844. And this being all the testimony offered by either party, the defendant asked the court to instruct the jury as follows:

*First.* That under the statute of limitations of 1843, a mere admission of indebtedness did not revive a debt barred by the statute, and that if plaintiff relies on a mere admission that the debt is unpaid, such admission must have been made

since the Code took effect, viz: July 1, 1851, to be binding on defendant, and entitle the plaintiff to recover.

*Second.* That in order to entitle the plaintiff to recover, on the ground that the cause of action still justly subsists, the fact that it does justly subsist, must appear from the answer of the defendant, or from his testimony as a witness.

*Third.* That any admissions contained in the letters of the defendant, dated June, 1848, and February 10th, 1850, are not evidence in this action against the defendant, to show an admission that the debt is unpaid, or that the cause of action still justly subsists, for the reason that they were made prior to July 1, 1851, when the Code took effect and went in force.

*Fourth.* That a promise to pay, in order to revive a debt barred by the statute of limitations, must have been made *after* the debt was barred; and that a promise or admission that the debt is unpaid, made before the debt was barred, and while an action might have been maintained on the note, will not be sufficient to revive the debt.

All of which instructions were refused, and defendant excepted. The bill of exceptions shows that the court had previously instructed the jury, that the issue made by the pleadings as to the fact that the cause of action still justly subsists, was an immaterial one, and when the second instruction was asked by defendant on that point, plaintiff's counsel acquiesced in the disposition made of that issue, and claimed nothing thereon. The jury having returned a·verdict for the plaintiff, the usual motions in arrest and for a new trial, were made and overruled, and judgment rendered on the verdict for the amount of the note and interest.

The defendant appeals, assigning in this court the following errors:

1. In admitting in evidence, the letters of defendant, dated June, 1848, and February 10th, 1850.

2. In refusing the instructions asked by appellant.

3. In overruling the motion for a new trial.

4. In rendering judgment against the appellant.

*Clarke & Henley*, for the appellant.

Three questions are presented in this case, for the consideration of the court, as follows:

1. Were the two letters of defendant properly admitted in evidence?

2. Were the instructions asked by defendant, properly refused?

3. Is there any evidence of a subsequent promise?

And we shall argue these questions in the order here presented.

I. The letters were improperly admitted in evidence. The note bears date the 8th of October, 1844, and suit could have been brought upon it at any time before the 8th of October, 1850. The statute of limitations could not have been pleaded until that date. This suit was commenced on the 19th of July, 1855. The first two letters offered in evidence to prove a subsequent promise, are respectively dated June, 1848, and February 10th, 1850, before the note was barred by the statute of limitations, and while an action could yet have been sustained upon it. In other words, until October 8th, 1850, the remedy was not suspended; and no promise was necessary, till after that time, to give life and vitality to the note, or set the wheels of litigation in motion. If then, either of these letters contain a promise to pay, or an acknowledgment of the debt, having been written before the note was barred, they are merely *nudum pactum*, destitute of a consideration, and cannot be enforced. A promise to pay a debt barred by the statute, or an acknowledgment of such a debt, is only upheld by the moral obligation that exists to pay the same. If the debt is not barred—if an action may still be sustained on the note—at the time the promise or acknowledgment is made, no such moral obligation exists, and the promise fails for want of a consideration to sustain it. If there is a legal liability to pay, when the promise is made, that promise can give no additional force to that liability. If there is no legal liability, then the promise or acknowledgment, is sustained on the ground of moral obligation. Where there is no mere moral obligation to give effect to

the promise, it is no more binding than any other promise, made without consideration. These views, we think, will be found to be sustained by the following authorities: *Danforth* v. *Culver*, 11 Johns. 146; *Hill* v. *Henry*, 17 Ohio, 9; *Ruff* v. *Ball*, 7 Harr. & J. 14; Chitty on Cont. 821; *Peyton* v. *Minor*, 11 S. & M. 148; Story on Cont. 1118, 1120. If these views are correct, the letters, if they prove anything, were improperly admitted in evidence.

II. We come now to the consideration of the instructions. The first instruction which the court refused to give, asserts a proposition which we believe to be legal. At common law, no lapse of time would bar the recovery of a debt. Limitations are purely statutory. If the statute provides that a subsequent acknowledgment, or a subsequent promise, shall remove the bar, then the courts possess the power to enforce the collection of the debt. If the statute contains no such provision, then the courts possess no power to enforce payment, even though there may have been a promise or acknowledgment. The whole proceeding being statutory, there is no power anywhere to go behind the statute. The old English decisions, by which the courts in their hostility to the statute, endeavored to abrogate it, are not law. Hence the statute of 21 James I, c. 16, was followed by 9 George IV, c. 14, which contains an express provision that a written admission of the debt within six years, was sufficient to obviate the statute. Following this statute, which sought to legalize the decisions of the English courts, it is believed, that the statutes of limitations of all the states, except the Iowa act of 1843, contain provisions reviving the remedy by a subsequent promise. The Iowa act of 1843, contained no such provision; and we hold, in the language of the instruction, that under that statute, a mere admission of indebtedness, did not revive a debt barred by the statute. This instruction, we think, should have been given.

The second instruction should have been given. It applies to and explains an issue presented by the pleadings. The replication alleges, that the defendant admitted that the debt, for the recovery of which this action is brought, was

unpaid, and that said cause of action justly subsists. This is denied by the rejoinder. Here is the issue. The Code provides that in actions founded upon contract, the above limitations shall not apply, if from the answer of defendant, or from his testimony as a witness, it appears affirmatively that the cause of action justly subsists. Code, 246. Upon this issue, it was our right to have an instruction—it was the duty of the court to inform the jury, that this issue could only be found for the plaintiff, from the answer of defendant, or his testimony as a witness—that it could be proved in no other way. This the court refused to give; but confused the jury, and prejudiced our rights, as the exceptions show, by telling the jury that this issue was immaterial, &c., which was not true by the way. The issue was submitted to the jury, and was material, and it was just as easy, and quite as proper, for the court to have given the instruction asked, or have refused it, on the ground that it was not law. The disposition the court made of the instruction, was erroneous. Our views upon the other two instructions, are presented above, and we need not repeat here.

III. The third interrogatory propounded above, is most material in this case—*is there any evidence of a subsequent promise, or any admission of the debt, from which such promise can be implied ?* This leads us to a consideration of the testimony. Let us first, however, determine what the law is upon this point.

In *Lockhart* v. *Eaves*, Dudley, (S. C.) 321, it is held, that the acknowledgments and promises must specify or plainly refer to some *particular* demand or cause of action to be revived or created by them. In *Pray* v. *Garcelon*, 5 Shep. 145, it is held, that a mere general admission by the party sought to be charged, that he was owing something to the plaintiff, *without stating how much, or for what*, is not sufficient to take the demand out of the statute. In *Fellows* v. *Guimarin*, Dudley, (Geo.) 100, it is said, that a promise sufficient to take a contract out of the statute, *must be express*, or an acknowledgment *so direct and explicit as to be equivalent* to a promise. These cases we find cited in 5 U. S. Digest, and

Penley v. Waterhouse.

it is proper that we should say, that we have not been able to refer to the reports themselves. To the same purport are the following: *Allison* v. *Pennington*, 7 Watts & Serg. 180; *Allison* v. *James*, 9 Watts, 380; *Magee* v. *Magee*, 10 Watts, 172.

In *Robbins* v. *Farley*, 2 Strobh. 348, the law is laid down as follows: "Acknowledgments or promises, to obviate the statute of limitations, are not sufficient, unless they specify or plainly refer to some particular demand or cause of action to be revived or created by them." In *Clarke* v. *Dutcher*, 9 Cow. 674, it is held, that an acknowledgment must *clearly* refer to the very debt in dispute between the parties. In Story on Contracts, the law is laid down thus: "Such an acknowledgment must contain an unqualified admission of the debt, *and a willingness to pay it.*" Story on Cont. 1120, referring to *Clementson* v. *Williams*, 8 Cranch. 72. In *Martin* v. *Broach*, 6 Geo. 21, it is held, that an acknowledgment or promise to take a case out of the statute, must specify, or plainly refer to the particular debt, or demand, or cause of action, sought to be revived. In *Brailsford* v. *James*, 3 Strobh. 171, the acknowledgment of the defendant, was as follows: "Joe need not scruple about owing me the amount necessary for two courses of medical lectures, for I am owing him money on the trust estate, with interest from the day of settlement, and adding the interest, I owe him $300;" *held*, that these words were not sufficient to identify the debt sued on, so as to take the case out of the statute. In *Davis* v. *Steiner*, 2 Harris, 275, it is held, that to take a debt out of the statute, there must be a distinct acknowledgment of a particular debt, but its amount need not be stated. In this case, the words relied upon were these: Defendant said he owed plaintiff some money, and his son was in after it, and he was coming on to Greensburgh, to make arrangements to pay the money. In *Arey* v. *Stephenson*, 11 Ired. 86, it is held, that a debt will only be taken out of the operation of the statute, on a promise by the debtor to settle with a creditor, when it appears that the promise was made in regard to a particular debt. See also *Ventris* v. *Shaw*, 15 N. Hamp. 422; *Kensington Bank* v. *Patton*, 2 Harris, 479; *Grant* v. *Ashley*, 7 Eng.

762; *Brainard* v. *Buck*, 25 Vermont, 573; *Deloach* v. *Turner*, 6 Rich. 117; *Pool* v. *Relfe*, 23 Ala. 701; all of which sustain the doctrine that there must be, not only a specific admission of the debt sued on, but that it must be accompanied with a willingness to pay, or at least *not* an unwillingness to pay.   In *Ayres* v. *Richards*, 12 Illinois, 146, the language relied upon was as follows: The witness called upon defendant, and showed him the account, and read over to him each item of the account, and as he read, Ayres admitted to the correctness of every item, and of the whole account, but as to the items for the board of his son, he stated that he thought that item, or a portion of it, had been paid by his son.   He further stated that the account was correct, and that he would see Richards *and settle with him.   Held*, to be insufficient, and the court says, that the promise may be implied from an unqualified admission that the debt is due and unpaid, *nothing being said or done at the time rebutting the presumption of a promise to pay.* These authorities might be multiplied, but it is sufficient to say, that the current of modern decisions are of the same tenor.

From these authorities, then, we may lay it down as settled law, that an acknowledgment to take the cause out of the statute, *must specify or plainly refer to the particular debt sued on, and must be accompanied with a willingness to pay.* Both of these things must concur—one is not sufficient, since courts have leaned *to*, rather than *against* the statute.   Let us then try the evidence by this rule, and see what it amounts to.   The only language in letter No. one, bearing upon this point, is the following:

"MAINE TOWNSHIP, February 10th, 1850.

" I have to say that I cannot pay you anything at present, for I have been very unfortunate, &c. * * You say you can sell the note there at a great discount.   I am not able to purchase it at any rate, without depriving myself and family of the necessaries of life. * * * And if you can sell it to any one there or here, you may.   I should like to buy it, but see no prospect of canceling my paper."   Now, in the first

place, what note is here referred to? The note in suit? There is no evidence establishing that fact, nor is there any specific admission of this particular debt, as the authorities require. Again; the whole letter is to be taken together, and so far from showing a willingness to pay, the letter alleges that defendant cannot buy the note at *any price*, and closes with the assurance that defendant sees no prospect of canceling his paper. This certainly comes within the rule laid down in *Ayres* v. *Richards*, above cited; and from this letter no promise to pay, can be inferred certainly. In letter No. two, the language is as follows:

"JUNE, 1848.

"I have to say, that *I have no means* to pay my debts. I am disposed to pay my debts, if I had means, but I see no prospect, for I am quite infirm, &c. * * I have been dunned by some of my eastern creditors previous to receiving your letter, for there is a large amount that you did not get up, viz: Charles Ramstead, Boston, five to six hundred dollars, B. P. Pierce, N. H., two hundred dollars, and several others, and if they were all offered to me for twenty-five dollars, I could not pay even that small sum, without taking from me the necessaries of life."

We insist that there is nothing here that comes within the rule. There is nothing to identify the debt of the plaintiff—to show that it is the one in suit—and it shows an utter inability to pay. The defendant says in so many words, that I cannot pay my debts; I could not buy them all for twenty-five dollars, if they were offered to me at that price. If language like this, can be tortured into a promise to pay—either express or implied—then is the statute a farce.

The language of the *third* letter, which is *latest* in date, is still more explicit. Its words are these:

"JUNE 1st, 1854.

"I formerly expected to pay what I owed, but I have not been so fortunate as I anticipated. I have given up all hopes of being able to pay my debts. I went to California, and endured all the privations and hardships for three years that I could—was sick and lame, and spent all I made. * * I

know I have not enough to live on comfortable." In corroboration of this letter, is the testimony of the witness, McKinney, who says, that defendant remarked that he would not go to California, but for his eastern debts. The same witness further testifies, that the defendant named Penley as among his creditors. And Jordan testifies, that defendant said in 1853, when acknowledging a deed, that he expected Penley out, and he was selling the land to pay him. This is all the testimony. It specifies no particular debt—has no reference to the cause of action in this suit—the plaintiff fails to make it apply to the note in suit—and even though the whole testimony may possibly admit an existing liability to Penley on some account, or for some amount, the whole tenor and bearing of the evidence, so far from showing a willingness to pay, shows both an unwillingness and inability to pay. If this suit can be sustained on this evidence, then every creditor of defendant, upon these same letters and admissions, can likewise obtain judgment, for they are broad enough and wide enough, to apply to all. The evidence being insufficient to sustain the verdict, the court should have sustained the motion to set the same aside, and erred in overruling the motion.

*George D. Woodin*, for the appellee.

The first question raised by appellant is, were the two letters of defendant, properly admitted in evidence ? It is contended that a mere promise, made *before* the cause of action is barred by the statute of limitation, is without consideration and consequently void, and for this reason it is claimed, that the first two letters written by defendant before the statute commenced running, were improperly admitted in evidence.

This, I think, is not the law. If it be true that an acknowledgment of indebtedness and willingness to pay, made while the legal liability existed, cannot be offered in evidence to show a new promise after the action is barred, then can a party be permitted to take advantage of the very forbearance by which he obtained time on his debt. Before the six years

expires, he acknowledges the indebtedness, says he is unable but willing to pay, and thereby induces the plaintiff to give him time on his demand ; and after that indulgence has been given, *in consideration of the acknowledgment of indebtedness,* we are told that he should be permitted to take advantage of the plaintiff's forbearance to sue. The contrary, we think, is clearly shown in cases of *Austin* v. *Bostwick*, 9 Conn. 496 ; *Galliger* v. *Hollingsworth*, 3 Har. & McHen. 122 ; and *Coles* v. *Kelsey*, 2 Texas, 541.

But granting that appellant has stated the law correctly, we think there is sufficient evidence to show a new promise *made after* the action was barred by the statute. The third letter offered in evidence by plaintiff, was written by defendant, on the 1st day of January, 1856, in which he acknowledges his indebtedness ; also says to the witness, Jordan, in November, 1853, "that he expected Penley out, and he was selling land to pay him." McKinney testifies, that in the spring of 1850, he heard defendant say, "that he would not go to California, but for his eastern debts, and that he named the plaintiff among the persons to whom he was indebted ; that defendant said, he could not safely hold property in his own name." This must, at least, be considered as an acknowledgment of indebtedness. The acknowledgment made to *Jordan and McKinney, not parties*, is sufficient ; 2 Greenleaf on Evidence, 441 ; Story on Contracts, 1014.

It is claimed, also, that it is not sufficiently certain to what debt the defendant referred, when he wrote the letters given in evidence, and when he admitted his indebtedness to plaintiff, in the presence of Jordan and McKinney. In the letters he refers to "the note," and if the reference was made to another than "the note," of plaintiff, the burden of proof was on defendant to show it.

But we think, a general acknowledgment of indebtedness is sufficient. In the case of *Whitney* v. *Bigelow*, 4 Pick. 110, it is held, that a general acknowledgment of indebtedness is *prima facie* sufficient to take a case out of the statute, and that the burden of proof rests on the defendant to show that

it referred to another claim. The same principle is recognized in 2 Greenleaf on Evidence, 441 ; Chitty on Contracts, 719, and held in *Coles* v. *Kelsey*, 2 Texas, 541 ; *Dinsmore* v. *Dinsmore*, 21 Maine, 437 ; *Barley* v. *Cram*, 21 Pick. 323 ; *Grey* v. *Laws*, 6 Gill, 87 ; *Bartholomew* v. *Bartholomew*, 22 Pick. 291 ; *Bird* v. *Gammon*, 3 Bing. 833, from all of which authorities, we see plainly, that when a general acknowledgment of indebtedness is made, the burden of proof rests on the defendant to show that it refers to different causes of action from the one on which suit is brought. Neither is it necessary, as claimed in defendant's argument, that the admission must state the precise amount due. Story on Cont. 1014.

In Chitty on Contracts, 719, referring to *Davis* v. *Steiner*, 14 Penn. 275 ; *Willis* v. *Wildman*, 18 Conn. 124 ; *Hazlebaker* v. *Reeves*, 12 Penn. 264, we find it laid down, that an acknowledgment of indebtedness from which a promise to pay may be inferred, is sufficient, although *the parties may differ as to the amount.* So also in Chitty on Contracts, 719, (note), and in *Woodbridge* v. *Allen*, 12 Metcalf, 470, we have it that, " it is not necessary in order to revive a debt barred by the statute of limitations, that any *specific sum* should be acknowledged to be due."

It is claimed, too, in the argument for defendant, that under the statute of 1843, an acknowledgment of indebtedness is not sufficient, unless accompanied by a *promise to pay.* We think that the jury, from the letters read in evidence, could easily have seen *an acknowledgment of the debt in terms so distinct as that a promise to pay could be inferred therefrom.* Chitty on Contracts, 719 ; *Moore* v. *Bank of Columbia*, 6 Peters, 86, and that an admission that a debt is due, is equivalent to a promise to pay the same.

WRIGHT, C. J.—Brevity may be consulted, by considering the errors assigned in this case, under two heads. *First.* Were the instructions asked, improperly refused ? and if not, *Second.* Was the verdict warranted from the evidence ? Before coming to the consideration of the first question, how-

ever, we propose to dispose of some positions assumed by appellant, which can hardly be said to be involved in the instructions asked.

He claims that the statute of 1843, contains no provision for reviving a. debt by a subsequent promise, and that, therefore, such promise will not bind the defendant, so as to authorize the court to enforce the collection of the debt. We are not aware of any authority which will sustain this position. It has been uniformly held, that a debt may be thus revived, and yet, certainly, none of the earlier statutes, either in this country or England, contained such a provision. The statute of 21 James I, chapter 16, which our statute of 1843 followed, had no such provision; and yet it was never doubted but that a subsequent promise would, and did, take the debt out of its operation. The subsequent promise is. a new evidence of the debt, and being proved, will maintain the action. It is to be considered as a new promise, founded upon the previous debt as a consideration, and supports the action, independent of the original promise—a new agreement founded upon the original consideration. *Bell* v. *Morrison*, 1 Pet. 360; 4 Bacon Abrig. 483. And another view of it is, that such promise is a waiver of the statute, or the bar created by the statute, just as a party may waive any other right, privilege, or defence he may have under the law. *Bangs* v. *Hall*, 2 Pickering, 368. The lapse of time, or the statute, does not extinguish the debt, but bars the remedy; and this remedy thus barred, may be revived by the subsequent promise, though the statute may make no such provision.

None of the authorities cited by appellant, as far as we have been able to examine them, sustain his position. The statute of 9 Geo. IV, chapter 14, referred to, certainly does not aid him. That statute only provides, (so far as material to be here considered), that the subsequent promise or admission, should be in writing. It only changed the manner of proving the promise, but by no means tends to establish the proposition, that before that statute, a verbal promise would not have been sufficient to take the debt out of the

operation of previous statutes of limitations.   Chitty on Contracts, 818.; 14 Pickering, 388.   In short, we may say, that the doctrine that a subsequent promise will revive the statutory bar, obtains, not because statutes of limitation, either in this country or England, have so provided, but because such promises have uniformly been held to obviate the effect of such statutes.

In considering the instructions asked by defendant, we will first direct our attention to the second, as that appears to have been refused for reasons that apply to it alone.   The Code, (§ 1661,) enacts that the limitations provided for in the previous section of the chapter, shall not apply to actions founded on contract, if from the answer of the defendant, or from his testimony as a witness, it appears affirmatively that the cause of action still justly subsists.   The plaintiff, in his replication to the plea of the statutes of limitations avers, that since the first day of July, 1851, and before the commencement of this suit, the said defendant admitted that the said plaintiff's cause of action still justly subsisted, and also avers, that the said cause of action does, in fact, still justly subsist.   These averments are distinctly denied in the rejoinder.   In view of this section of the Code, it appears, that the court instructed the jury that the issue so made by the replication and rejoinder, was immaterial, and plaintiff's counsel acquiesced in this disposition, and claimed nothing by that issue.   Under such circumstances, was it error to refuse the defendant's second instruction?   We think not. We are unable to see how he could possibly be prejudiced by such refusal.   There was no claim by plaintiff, that defendant had, either by his answer, or his testimony as a witness, admitted that the cause of action still justly subsisted. Under the circumstances, these averments in the plaintiff's replication, if material, could avail nothing; and that issue having been entirely withdrawn from the jury, it was unnecessary to give any instruction on the subject.

We next inquire, whether the fourth and last instruction, was properly refused?   The appellant, by his instruction, claims, that to revive a debt, the promise to pay must have

been made *after* the debt is barred by the statute; and that a promise to pay, or an admission that the debt is unpaid, *before* it is barred, and while an action might be maintained, is not sufficient. We think that reason, as well as authority, justified the court in refusing this instruction.

Let us briefly consider the reasonableness of this instruction. Suppose that before the debt is barred, the creditor is induced to forbear prosecuting it, by the continued promises of the debtor to pay. Thus influenced, the creditor delays until the statute applies, dating from the maturity of the debt or note. After this, the debtor refuses to promise, and when sued, claims that his continued promises shall not avail, because they were made before the debt was barred, and when he might have been sued, and but for which he would have been. According to this rule, does he not take advantage of that forbearance, by which he obtained time on his debt— a forbearance too, extended in consideration of his promises or admissions that the debt was unpaid. And it is to be recollected, that if the appellant's position is true, then it applies to a written promise or admission made before the debt is barred, as well as a verbal one. For one argument used in this part of the case is, that such a promise is only applied by the moral obligation that exists to pay the debt, and that if the debt is not barred at the time such promise is made, no such moral obligation exists, and the promise therefore fails, for the want of a consideration to sustain it. If this argument is sound, then, we repeat, it could make no difference that the promise was in writing, for it would fail for want of a consideration to support it, as would the verbal promise. But it is difficult to see the force of such an argument. Why there is not as much moral obligation to pay the debt before, as after, it is barred, we cannot perceive. It is said there is a legal obligation to pay, before it is barred, and we ask why is this not sufficient to support the promise, and especially, if we have superadded the moral obligation. The new promise before the debt is barred, may not give any additional force to the legal liability to pay—but it may continue that liability longer than it would have continued, but

for such promise. There is as much to support the promise in one case, as in the other, and if either promise has the better consideration to support it, it is certainly not the one made after the debt is barred.

Neither do the authorities cited, sustain the appellant's position. In Chitty on Contracts, 821, referred to, it is said, that although the statute of limitations bars the remedy after six years, the debt is not extinguished; it still exists, and the debtor is still under moral obligation to discharge it. He may, therefore, by a new promise to pay the debt, revive the original liability. So in Story on Cont., 1st ed. § 706, it is said that the operation of this statute may also be frustrated, by an acknowledgment of the existence of the debt, or by a new promise to pay it. This promise or acknowledgment, is considered as a new promise, founded upon the previous debt as a consideration, and must be sufficient in itself to support an action for the debt, independent of the original promise. But neither of these authors intimate that the promise would not be sufficient, if made before the debt was barred.

Nor can appellant claim to be aided in this position by the cases of *Danforth* v. *Culver*, 11 Johns. 146, and *Hill* v. *Henry*, 17 Ohio, 9. The latter case turned for the most part, upon a peculiar statute of Ohio, and that it in no manner determines the question now under consideration, is sufficiently shown by the concluding part of the opinion. "Upon mature consideration," says HITCHCOCK, J., in delivering the opinion, "we conclude that under the limitation laws of this state, the acknowledgment and promise to pay a debt which is barred by the statute, does not revive the original cause of action, but if a creditor would enforce collection, he must do it by suit on the subsequent promise." The case in 11 Johns. 146, does nothing more than recognize substantially the same doctrine as above quoted from Chitty and Story on Contracts.

The first and third instructions asked, present substantially the same questions, and may appropriately be considered together. And that question briefly stated, is, whether

the Code, by section 1670, does more than declare the law as it stood before its enactment ?    We think the determination of this question, and especially, if determined in the negative, disposes of all the matters contained in the two instructions as asked.    For it is evident, that if the admissions in said instructions referred to, would have been sufficient to take the debt out of the bar of the statute, before the taking effect of the Code, then we need not consider whether that section would or would not have a retroactive effect.    This section of the Code, provides that causes of action founded on contract, are revived by an admission that the debt is unpaid, as well as by a new promise to pay the same.    Does this do anything more than to declare the common law rule ?    We conclude not.

From the time of the passage of the first statute of limitation in England, it has been uniformly held, that a new promise to pay the debt, would have the effect of taking the case out of the statute.    What should be the character of that promise—whether it should be clear, explicit, and express, or whether the promise might be inferred from slight circumstances—will be found to be much controverted.    When, however, it was attempted to avoid the effect of the statute, by proof of the acknowledgment of the debt, without any proof of a promise to pay, more difficulty and doubt arose. It was at one time held, that the acknowledgment, without a promise to pay, would not be sufficient.    Afterwards, we learn, the acknowledgment of a debt was evidence from which a jury would be warranted in inferring a promise to pay, but was not a matter, if specially proved, on which a court would give judgment for plaintiff; and afterwards their courts went so far, as to hold that the slightest word of acknowledgment would take the case out of the statute.    See 11 Johns. 146, and the cases there cited.    And we may add, that the decisions in England, show that at first, their courts hesitated in departing from what was regarded as the positive language of the statute, in admitting that an acknowledgment of the debt should take a case out of its operation. But that, having once given such an effect to an acknowl-

edgment, these courts went to the other extreme, and permitted the slightest acknowledgment to revive the debt; in effect holding that the statute was entitled to no respect, and that such defences should not be encouraged. We have an instance of this, in the case of *Quastock, assignees, &c. v. England,* 5 Burr. 2630, where Lord MANSFIELD is reported to have said, " that the slightest acknowledgment is sufficient to take the case out of the statute ;" and again, " that in honesty, a defendant ought not to defend himself by such a plea."

Some of the courts in this country, have followed these extreme cases, and manifested a like disposition to deny to the statute, any force or efficacy. This disposition is not general, however ; and indeed we may say, that the tendency now is, not to explain away the statute, but to give it the same force and respect, which is given to any other statute. And the same is true of the English cases, even before the passage of the act of 9 Geo. IV, above referred to. Hence it may be now said to be well settled, that in order to take a case out of the statute, there must either be an *express promise,* or the acknowledgment of a *subsisting debt,* from which a promise of payment may be inferred. If, however, the debt shall be acknowledged ever so clearly, and the debtor expresses an intention not to pay, there can be no recovery. This is the repeated and express ruling in New York. *Allen* v. *Webster,* 15 Wend. 284; *Sands* v. *Getstor,* 15 Johns. 511; *Danforth* v. *Culver,* 11 Ib. 146; and so it is ruled in Massachusetts. *Bangs* v. *Hall,* 2 Pick. 368; *Munford* v. *Freeman,* 7 Metc. 432; *Sigourney* v. *Drury,* 14 Pick. 390; *Bailey* v. *Crane,* 21 Ib. 323. This latter case refers to the one in 2 Pick. 368, and says that the doctrine there laid down, has been tested by experience, and is undoubtedly sound and wise; and that it has everywhere been acknowledged as sound law. That case decided, that to take a debt out of the statute, there must either be an express promise to pay, or *an unqualified acknowledgment of a present indebtedness. In the latter case, the law will imply a promise to pay;* and so the case in 14 Pick. *supra,* says, that such new

promise may be expressed or implied, and a jury will be authorized and bound to infer such promise, from a clear, unqualified, and unconditional admission of the existence of the debt, at the time of such admission, if unaccompanied with any refusal to pay, or declaration indicative of any intention to insist on the statute of limitations.

And the same rule would seem to be recognized in the Supreme Court of the United States, and in most of the states. *Wetzell* v. *Bussard*, 11 Wheat. 309 ; *Moore* v. *Bank of Columbia*, 6 Pet. 92 ; *Bell* v. *Morrison*, 1 Pet. 361 ; *Cromwell* v. *Buckman*, 7 Blackf. 537 ; *Exeter Bank* v. *Sullivan*, 6 N. H. 132 ; *Perley* v. *Little*, 3 Greenleaf, 97. In the case of *Wetzell* v. *Bussard*, 11 Wheat. 322, Ch. J. MARSHALL, uses this language : " It is contended on the part of the plaintiff, that he has proved an acknowledgment of the debt, and that such acknowledgment, according to a long series of decisions, revives the original promise, or lays a foundation on which the law raises a new promise. The English, as well as American books, are filled with decisions which support this general proposition. An unqualified admission that a debt is due at the time, has always been held to remove the bar, created by the statute." And in *Seaper* v. *Tatton*, 16 East, 420, Lord ELLENBOROUGH says : " As to the sufficiency of the evidence of the promise, it was an acknowledgment by the defendant, that he had not paid the bill, and that he could not pay it ; and as the limitation of the statute is only a presumptive payment, if his own acknowledgment that he has not paid be shown, it does away with the statute." In *Read* v. *Wilkinson*, 2 Wash. C. C. 514, it is held, that if the offer of the debtor, on a fair interpretation, amounts either to a promise to pay, or to an acknowledgment of the debt, or some debt, it is sufficient to remove the bar of the statute. And again, it has been ruled, that from a general acknowledgment, where nothing is said to prevent it, a general promise to pay, may and ought to be implied ; but where the party guards his acknowledgement, an implication will not arise. Chitty on Contracts, 821 and notes.

Leaving adjudicated cases for the present, let us see what

is said by the text writers, as to the effect of an acknowledgment and a promise to pay. And as before remarked, it is clearly agreed, that if the debtor acknowledges the debt, and promises to pay, this revives it, and brings it out of the statute. So also it has been held, that a bare acknowledgment of the debt, within six years of the action, (under the statute of James,) is sufficient to revive it, and prevent the statute, though no new promise was made. 4 Bacon's Abrig. 483. This dictum, it will be observed, goes further than the more recent cases in this country, so far as the use of the term *bare* is concerned. But as here used, we give it but little weight, the proposition being clear, that an acknowledgment is sufficient. So in Angell on Limitations, 228, it is said, that it is not necessary that the promise should be express; it may be raised by implication of law, from the *acknowledgment* of the party, it being borne in mind, that this acknowledgment must not only go to the original justice of the claim, but admit that it is *still due.* See also in this connection, *Clementson* v. *Williams,* 8 Cranch, 72; and *Whitney* v. *Bigelow,* 4 Pick. 110, where it is said, that no set form of words is requisite; it may be inferred from facts, without words. Also see 2 Greenleaf's Evidence, §§ 440, 441. In Story on Contracts, § 706, it is said, as before shown, that the operation of the statute may also be frustrated by an acknowledgment of the existence of the debt, or by a new promise to pay it. And in section 707, he says, if there be no express promise to pay, a promise may be raised by implication of law, from the acknowledgment of the party. But such an acknowledgment, he adds, must contain an unqualified admission of the debt, and a willingness to pay it. An acknowledgment of the original justice of the claim, is not sufficient, unless accompanied with an admission of the party's present liability. And see on this subject 2 Parsons on Contracts, 347.

We have been thus full in referring to the authorities at this time, because they will serve to aid us, when we come to consider the second error assigned, as well as show, by a series of decisions, the law as applied to the question now

before us—and from these decisions, we deduce the following, among other propositions:

That the statute of limitations should not be viewed in an unfavorable light, or as a defence unjust and discreditable; but like all other statutes, should be so construed as to effect the intention of the legislature, that intention being to afford security against stale demands, after the true state of the transaction may from a variety of causes, be either forgotten, or rendered incapable of explanation.

That a party may waive the bar created by the statute, and revive the cause of action, by a promise to pay.

That if this promise is conditional in its character, the plaintiff must show that the condition has happened, else the defendant is not liable.

That the cause of action may be revived, not only by a promise to pay, but also by an acknowledgment of the debt.

That if this acknowledgment only goes to the original justice of the debt, it is not sufficient; but it must also admit its present existence, or that it is due.

That the terms of the acknowledgment or promise, are not material, if they clearly and unqualifiedly show a subsisting debt, for which the defendant is liable.

That when there is an acknowledgment of a present indebtedness, the law implies a promise to pay.

That such acknowledgment, though ever so clear, will not be sufficient, if accompanied with an express intention not to pay, or of an intention to insist on the benefit of the statute. But if not accompanied with any such intention, an acknowledgment is sufficient.

Let us now apply these propositions, as far as relevant, to the present question. The section of the Code, before cited, provides that causes of actions founded on contract, are revived by an admission that the debt is unpaid, as well as by a new promise to pay the same. This section must be construed with reference to the law, as it stood prior to that time. We do not understand that the admission that the debt is unpaid, would be sufficient, if accompanied with a

denial of the original justice of the demand, or any other language that indicated that there was a valid defence to it— the admission should not negative the fact that the debt justly subsists. Nor do we suppose, that it would be necessary that the debtor should say in so many words, that the debt was unpaid. But if, when his language is fairly construed, such an admission can be satisfactorily and clearly shown, it will be sufficient. And what is this admission, but an acknowledgment of the debt? The debt, we must bear in mind, is not extinguished by the bar of the statute. It still exists. The promise, or acknowledgment, or admission, does not create the debt, but revives it and continues it, so to speak, in law; and when the defendant, under the Code, admits that the debt is unpaid, he makes in effect neither more nor less than an acknowledgment from which the law implies a promise to pay, supported by the original consideration. In short, this was one of the methods in which a debt might have been acknowledged, so as to revive it before the Code took effect, and yet not the only method. The defendant might say, "I acknowledge your claim; your debt was and is just, and ought to be paid; I acknowledge that payment has been delayed too long, and I must pay it;" or use like language. And yet all such expressions are but acknowledgments or admissions of a continuing or existing liability to pay; but would not amount to what is termed an express promise to pay. And finally, how can the debtor acknowledge the debt, without admitting it to be unpaid; and how can he admit it to be unpaid, without acknowledging it? Does not the term acknowledgment in this connection, necessarily include the admission provided for in the Code, as one of the methods of acknowledging the debt; and does not such an admission amount to an acknowledgment, and can it be fairly said to be any more or less?

With this view of the law as it stood before the adoption of the Code, we have no hesitation in saying, that the instructions based upon the supposed change, were properly refused. And we therefore need not discuss the other positions which have been suggested; and these are: *First.*

Whether, if this section of the Code did change the previous law, it does not apply alone to the remedy, and in no manner to the contract, and might not therefore have a retrospective operation, and affect and control admissions previously made? And *Second.* Whether the instructions were not properly refused, for the reason that the defendant's admissions, as proved since the taking effect of the Code, were sufficient to sustain the verdict, and that, therefore, the previous admissions were entirely immaterial? We need intimate no opinion as to the first question. The consideration of the second, will be necessarily to some extent involved in determining the last question in the case, to which we now come; and that is, whether the verdict and judgment were justified from the evidence?

And we acknowledge that the question is not free from difficulty. There is no pretence for claiming, that the debt was revived by an express promise to pay. If revived, it is upon the grounds that he has acknowledged the debt, or admitted it to be unpaid. Counsel for appellant, urge that this acknowledgment is not sufficient, for several reasons; and we perhaps, cannot better present the view entertained by us on this part of the case, than by briefly examining these reasons. It is first claimed, that the evidence shows an unwillingness on the part of the defendant to pay the debt; or at least, does not prove an express willingness to pay. Without referring to the letters in detail, we think they do prove a willingness to pay. It is true, that defendant does refer to, or speak of, an inability to pay, and indeed his poverty would appear to be that which he most strongly urges upon the plaintiff, to induce him to not urge payment. But an expression of inability, can hardly be said to amount to an expression of unwillingness, in the sense that this latter term is used in the books. Unwillingness is disinclination, reluctance to do a particular thing; and yet there may be an inclination, desire, or readiness to do that which a party is unable to do. And so on the other hand, there may be the ability, without the inclination, or indeed coupled with a positive disinclination. An unwillingness to

pay, results or rather arises, from mere objection to the debt, founded either upon circumstances transpiring at the time of the contract, or subsequent; and necessarily imports something different from an inability to pay.   The expression of unwillingness, is held to defeat the promise or acknowledgment, upon the ground that it negatives the just existence of the debt.   The recognition, as we have seen, must be clear and unqualified, and it is said this cannot be, if an unwillingness to pay is manifested.   But on the other hand, the expression of an inability, in no manner takes from the acknowledgment, if it is otherwise sufficiently full and unqualified.   If it appeared that the condition upon which he promised was an ability to pay, the question would be different.   But as presented, we conclude that the expression of an inability, cannot amount to an unwillingness.   But further, we think, as already stated, that defendant does express a willingness to pay—among other the following expressions are used by him in his letters and conversation : "I am disposed to pay my debts, if I had the means; I formerly expected to pay what I owed, but I have not been so fortunate, &c.; I would not go to California, but for my eastern debts, and among others, I am indebted to plaintiff;" and again, in December, 1853, when acknowledging a deed, for a parcel of land, which he had sold, he said he expected plaintiff out, and was selling this land to pay him.   All of these expressions clearly manifest a willingness to pay plaintiff, and it would be doing violence to language certainly, to hold that they showed an unwillingness.   And to our minds the fair conclusion to be drawn from all this testimony is, that defendant was willing to pay, and acknowledged the correctness of plaintiff's claim, but urges his poverty and afflictions as reasons why he is unable.

Concluding, therefore, that there is not only the absence of an expressed unwillingness, but proof that he expressed himself willing to pay; and that in this respect the testimony was sufficient, we next consider the second objection urged. And that is, that there is not sufficient to show that the ad-

mission or acknowledgment had reference to this particular debt.·

We are aware that on this subject the authorities are far from being uniform.  The courts in Massachusetts, and other states, have held, that a general acknowledgment of being indebted to the plaintiff, is sufficient *prima facie* to take the demand sued on out of the statute; and that the *onus* lies on the defendant, to show that his acknowledgment had reference to a different demand.  *Whitney* v. *Bigelow*, 4 Pick. 410; *Bailey* v. *Crane*, 21 Ib. 323; *Woodbridge* v. *Allen*, 12 Met. 470; *Gray* v. *Jarvis*, 6 Gill, 82.  In other states, it has been held, that the acknowledgment must be so precise and definite in its terms, as to show that the debt sued on, was the subject matter of it; and that the acknowledgment of a mere general indebtedness, is not sufficient.  *Moore* v. *Hyman*, 13 Ired. 272; *Harbold* v. *Kuntz*, 16 Penn. 210; *Clarke* v. *Dutcher*, 9 Cow. 674.

In this case, it does not appear that any instructions were asked or given on this particular question.  It would appear to have been left to the jury to determine, whether the defendant intended to acknowledge this particular debt.  And to this course, we can see no good objection.  It does not seem to be entirely settled by the authorities, whether the sufficiency of the acknowledgment in all respects, to remove the bar of the statute, is to be determined by the court or jury.  When the question is one of intention, however, to be gathered from the words used, and from all the circumstances of the case, we believe it .to be proper to leave it to the jury, under the instructions of the court.  2 Parsons on Contracts, 348; Angell on Limitations, § 238.  Here no proof was made that any other debt existed, that might have been referred to in the letters and conversations.  Under such circumstances, what objection can there be to leaving it to the jury to determine, whether defendant had reference to this debt?  Was it not as legitimate a subject for their consideration and determination as any other question of fact?  Did the defendant refer to this note in his letters and conversation? was the question, and this question, we think,

was properly submitted to the jury.   In such cases, it is the duty of the court to instruct the jury as to the principles of law applicable, and by which they must be governed in their determination.   For instance, they might be advised, that if the acknowledgment was general, and it appeared that two or more debts existed, the *onus* was thrown upon the plaintiff to clearly and fully satisfy them, that the debt sued on, was the one intended.   If, on the other hand, the proof satisfied them that the debt sued on, was the only one between the parties, then such acknowledgment would be sufficient, without referring to the debt, by date, amount or description. And again, that if there was an absence of proof as to any other debt, they were to judge from all the circumstances, whether the acknowledgment had reference to the claim which was the subject of the suit, it being borne in mind, that the jury must in all cases, be satisfied that the defendant at the time he made the acknowledgment, intended to refer to the claim sued, and not another.   And, finally, that in all such cases, the burthen of proof is on the plaintiff, to show that the acknowledgment had reference to the claim which he sets up, and unless he does clearly so satisfy them, their verdict should be for defendant.

Believing that this question was properly left to the determination of the jury, the remaining inquiry is, whether they were justified in finding as they did from the testimony. And we certainly cannot conclude that this verdict was so far against the weight of evidence, as to authorize a new trial. To sustain the verdict, we have, first, the fact that no proof is made of the existence of any other debt.   In the next place, in his letter of February, 1850, he distinctly refers to the debt which he was owing, as " the note," and when we consider further, that in all the correspondence and defendant's conversations, he makes no reference to plaintiff's having more than one demand, but at different times speaks of making efforts to pay plaintiff, we think the jury might reasonably have concluded that defendant did refer, and intended to refer, to this particular debt.

But it is claimed, that the acknowledgment was indefinite

as to the amount owing. If, however; the note sued on, was the one referred to, it becomes *prima facie* evidence of the amount of the debt. Where the promise or acknowledgment relates to a particular debt, the evidence of which is in writing, as a promissory note, and is sufficient to revive it, the original note, with interest, is *prima facie* the amount due. In short, when thus revived, (the acknowledgment or promise not fixing a definite amount,) the note becomes the: evidence of the amount, subject to any offsets, payments, or the like, just as if suit had been brought on it before it was barred. We conclude, therefore, that the court did not err in refusing the instructions asked; that the verdict was warranted from the evidence; and that the motion for a new trial, was properly overruled.

Judgment affirmed.