## LINDSEY v. LYMAN.

**Statute of limitations:** REVIVAL OF DEBT. A new promise to pay before the debt is barred will remove or prevent the bar of the statute. It is not necessary that it should have been made *after* the debt was barred. Following *Penley* v. *Waterhouse*, 3 Iowa, 418.

*Appeal from Hardin District Court.*

THURSDAY, OCTOBER 9.

ON the 16th day of October, 1872, plaintiff instituted an action against defendant upon a promissory note executed by defendant to W. P. Large, and indorsed without recourse, dated June 5, 1861, due one day after date; and to take the case out of the bar of the statute of limitations, relied upon a letter of defendant, dated November 14, 1869, acknowledging the existence of the debt, and promising to pay as soon as he could. To the petition the defendant demurred as follows:

" Said petition shows affirmatively that its cause of claim is barred by the statute of limitations, said exhibit in same not making a new promise to pay the said cause of claim in said petition."

The court sustained the demurrer, and, the plaintiff electing to stand thereon, and refusing to further plead, rendered judgment against plaintiff for costs. Plaintiff appeals.

*Huff & Reed* for the appellant.

*F. Gilman* and *Porter & Moir* for the appellee.

DAY, J. — The only position urged by appellee is that the promise to pay, being made before the debt was barred by the statute of limitations, does not take it out of the operation of the statute. This precise question was raised in *Penley* v. *Waterhouse*, 3 Iowa, 418, and was there, upon both principle and authority, decided adversely to the position assumed by appellee. See the opinion on pages 435–6. And, although the correctness of that decision is assailed in the argument, it

is in our opinion in accord with reason and supported by logic which is impregnable. Fully satisfied with the conclusions there reached, and with the reasoning by which those conclusions are arrived at and sustained, it cannot be expected that we will now consider the question as *res nova,* or review the arguments already advanced.

Section 1670 of the Code of 1851, construed in *Penley* v. *Waterhouse,* is, so far as the question here concerned is involved, identical with section 2751 of the Revision, the only change being that the latter section prescribes the nature or character of the admission or new promise, namely, that it must be in writing.

The principal argument, and one not without plausibility, advanced against the construction adopted in *Penley* v. *Waterhouse* is based upon the phraseology of the statute. It provides that causes of action founded on contract are *revived* by an admission that the debt is unpaid as well as by a new promise to pay the same. It is urged that to *revive* is to bring again to life, and that this cannot be done until after the thing revived is dead.

Although language is the most admirable of all inventions, if indeed it be a human invention at all, yet it is not sufficient to express without ambiguity all the nice and varied shades of thought.

The word "revive" means to bring again to life, to reanimate, to renew, to bring into action after a suspension; as to revive a project or scheme that had been laid aside. WEBSTER.

It is the word which has been generally employed in judicial decisions to express the effect of an admission of the existence of indebtedness or a promise to pay a debt otherwise barred by the statute of limitations.

There is nothing in the meaning of the word as thus employed, which renders it necessary that the reanimating, renewing influence of the promise or admission shall begin to be exerted the instant the admission or promise is made. If the debt is already barred at the time of the admission or new promise, it at once restores it. But if the debt is not then

barred its operation is suspended until the time elapses when the remedy for the enforcement of the debt but for the admission or promise would be gone, and then it reanimates or revives the debt. Or, more properly speaking, by its life sustaining energy, it preserves life in that which was about to die, and which but for it would have been dead. The sense of the word will be better understood by reference to the condition of the note itself. Standing alone after 10 years from its maturity it is without vitality, it does not establish an indebtedness, it cannot be enforced. Proof of the new promise or admission restores it, infuses into it new life, places it in a condition to be enforced. And this it does without reference to the time when the admission or promise is made.

We conclude, therefore, that the court erred in sustaining the demurrer and that the judgment should be

Reversed.