670 P.2d 582

**Sally TAFOYA, individually and on behalf of Andrea Tafoya, a minor, Plaintiff-Appellant,**

v.

**John DOE and Carrie Tingley Hospital, an institution of the State of New Mexico, Defendants-Appellees.**

No. 5906.

Court of Appeals of New Mexico.

June 2, 1983.

Certiorari Quashed Oct. 7, 1983.

Bruce P. Moore, Moscow, Idaho, for plaintiff-appellant.

Paul L. Butt, Deborah S. Davis, Shaffer, Butt, Thornton & Baehr, P.C., Albuquerque, for defendants-appellees.

## OPINION

WALTERS, Chief Judge.

On defendant hospital's motion for summary judgment, the trial court granted summary judgment to defendants on Sally Tafoya's claims for herself and her infant daughter against the hospital and one of its employees. The court made findings and conclusions in its summary judgment as follows:

THE COURT FINDS:

1. Plaintiff Sally Tafoya received an incorrect RH factor blood transfusion at Carrie Tingley Hospital in March of 1972.

2. Plaintiff Sally Tafoya learned of a blood transfusion related immunization reaction in the summer of 1979, in connection with the impending birth of her child, Plaintiff Andrea Tafoya, a minor, which occurred on August 26, 1979.

3. Plaintiff Sally Tafoya thereafter checked into the possibility of an incorrect transfusion at St. Joseph's Hospital through her attorney but did not recall the 1972 Carrie Tingley transfusion and no inquiry was made into it until July of 1980.

4. Notice of a claim under the New Mexico Tort Liability Act was not given until July 31, 1980.

## CONCLUSIONS OF LAW

1. Plaintiff Sally Tafoya had knowledge of the existence of the injury and its cause as of August 26, 1979.

2. Plaintiff Sally Tafoya failed to give notice to the Risk Management Division of the claim under the New Mexico Tort Liability Act within the ninety (90) days prescribed by law.

3. The notice requirement of the New Mexico Tort Liability Act is not unconstitutional.

While recognizing that this suit concerns separate claims for the mother and the infant, we will refer to Sally Tafoya as the plaintiff or appellant. She contends that:

(1) Notice was not necessary under *Cardoza v. Town of Silver City,* 96 N.M. 130, 628 P.2d 1126 (Ct.App.1981);

(2) Defendant hospital did not deny, by affirmative defense, that it had actual notice, and a question of fact on that issue remained;

(3) Written notice was given within 90 days after Sally learned that the wrong transfusion had been made at Carrie Tingley Hospital eight years earlier;

(4) The notice provision of NMSA 1978, § 41–4–16 of the Tort Claims Act is unconstitutional as to Andrea;

(5) It was error to dismiss the complaint against John Doe.

We discuss the arguments in the order listed.

### A. *The mother's claim.*

#### 1. *Necessity of notice.*

It is plaintiff's position that if the governmental entity creates a condition that causes injury, no notice is required. She relies on *Cardoza v. Town of Silver City, supra,* as so holding. The flaw in her reliance is that *Cardoza* was not concerned with notice to the Town *of a claim for damages,* which is the "notice" requirement imposed by the Tort Claims Act, NMSA 1978, 41–4–1, et seq. *Cardoza* discussed only whether the Town had to have actual or constructive notice of a street defect creating a dangerous condition before it could be held liable for negligence in failing to repair the condition. The *Cardoza* notice question addressed the negligence or foreseeability issue; the Tort Claims Act notice provision operates in conjunction with the statute of limitations section on the issue of a timely claim.

This point has no merit.

#### 2. *Question of actual notice.*

Plaintiff argues that § 41–4–16(B) provides for waiver of written notice if the governmental entity "had actual notice of the occurrence" complained of. Defendant hospital's affirmative defenses on the notice

issue were that the claim was "barred by ... § 41–4–15 and § 41–4–16" of the Act, and that the hospital "did not at any time material have actual notice of the conduct alleged." The documents supplementing the pleadings would indicate that more than 90 days passed from the time Sally became aware of the blood problem until she gave written notice. Nothing was shown by defendant to support its claimed absence of actual notice; the hospital's transfusion record attached to plaintiff's interrogatories shows that plaintiff's blood was typed at Carrie Tingley Hospital as Rh A-positive on March 14, 1972 and Rh A-positive donor blood was transfused on March 15, 1972. It is not disputed that Sally's blood was Rh A-negative. The record and defendant's denial of actual notice are at odds. A factual matter existing, it should not have been decided against plaintiff by summary judgment. *See Emery v. University of New Mexico Med. Center,* 96 N.M. 144, 628 P.2d 1140 (Ct.App.1981).

### 3. *Timeliness of the Written Notice.*

Shortly before August 26, 1979, when Andrea was born, Sally Tafoya's attending physician discovered an Rh-positive sensitization in her blood and alerted her to the likelihood of a blood immunization problem in the child she was carrying. The problem manifested itself when the baby was born with a severely-involved blood immunization condition, requiring an immediate exchange transfusion, and at least eight transfusions thereafter. Sally was advised that she should have no more children because the vaccine normally administered for a second pregnancy, when the Rh-negative factor was present, would have no effect upon a mother whose blood had been immunized.

Sally's doctor told her that the two reasons for sensitization in a woman having her type of Rh-negative blood were an earlier pregnancy or a transfusion of Rh-positive blood at some time in her life. Mrs. Tafoya had not been pregnant before, but recalled having had one or more blood transfusions when bone surgery had been performed on her at St. Joseph's Hospital in 1971. A check of St. Joseph's records in October 1979 reflected nothing to indicate any blood mismatching at St. Joseph's.

In July 1980, Sally Tafoya remembered that she had had a bone graft at Carrie Tingley Hospital during a lengthy continuation of the treatment begun at St. Joseph's. She had completely forgotten about that operation until then. She immediately notified her attorney and, as soon as the Tingley records disclosed the transfusion of A-positive blood in March of 1972, a written notice of claim was made to the proper statutory agent.

■ The time for giving notice in a medical malpractice action is calculated "from the time the injury manifests itself in a physically objective manner *and* is ascertainable." *Peralta v. Martinez,* 90 N.M. 391, 564 P.2d 194 (Ct.App.1977) (emphasis in original opinion). This rule was repeated by our Supreme Court in *Crumpton v. Humana, Inc.,* 99 N.M. 562, 661 P.2d 54 (1983). There is no question that Mrs. Tafoya knew her condition and the baby's reaction had, in all probability, resulted from an incompatible blood transfusion. She did not know, however, the answers to who administered the wrong transfusion or how, where, or when it occurred.

Plaintiff argues that the injury was not ascertainable until Mrs. Tafoya remembered the possibility of a transfusion at Tingley Hospital. She then gave notice of her claim as soon as she knew or should have known of the source of the mismatched transfusion. In essence, she contends that because she did not remember having received a blood transfusion at defendant hospital, it was impossible for her to give notice during the time her memory failed her.

Defendant, on the other hand, urges us to hold as a matter of law that Mrs. Tafoya, by the exercise of due diligence, should have known that the incorrect transfusion occurred at defendant hospital. In other words, that the cause of the injury was "ascertainable," from an objective viewpoint, at least on the date the child was born.

■ If written notice was required in this case, and our discussion under Point 2 above casts serious doubt on that requirement, the statute requires that that notice had to be given no later than 90 days after August 26, 1979. The written notice in July 1980 would not satisfy the written notice limitation of the statute.

B. *The baby's claim.*

■ 4. *Constitutionality of the notice provisions of the Tort Claims Act, as applied to the infant plaintiff.*

Section 41–4–16 of the Tort Claims Act makes no provision for delayed notice of an infant's claim, nor does it attempt to place a burden on anyone else to give timely notice on behalf of the infant. Instead, it requires "[e]very person," except one who is incapacitated "by reason of injury," to give notice within 90 days of the occurrence giving rise to the claim.

Baby Andrea was born on August 26, 1979. Her doctor was immediately aware "that Mrs. Tafoya had delivered a severely involved baby with an erythroblastosis and that the baby was Rh-positive and was in trouble." Written notice of Andrea's claim against the hospital and its John Doe employee was given on July 31, 1980. Suit was filed on December 19, 1980. If notice by the baby was not required because of her infancy, the action was timely commenced under § 41–4–15 of the Act. New Mexico has not previously addressed the constitutionality of the notice issue on this ground or under the instant facts. *Cf. Ferguson v. New Mexico State Highway Comm'n,* 99 N.M. 194, 656 P.2d 244, *cert. denied,* 99 N.M. 226, 656 P.2d 889 (1982).

Chief Justice McManus wrote, in *Espanola Housing Authority v. Atencio,* 90 N.M. 787, 568 P.2d 1233 (1977), that statutes requiring tort victims to give governmental tort-feasors notice of an injury within a specific period of time "operate as statutes of limitations." Section 41–4–15, entitled "Statute of limitations," recognizes an exception for minors from the 2-year limitation applying to other plaintiffs. NMSA 1978, § 37–1–10, provides for tolling of certain general limitation periods until "one

year from and after the termination" of one's minority. Referring to a similar situation in *Hunter v. North Mason High School,* 12 Wash.App. 304, 529 P.2d 898 (Ct. App.1974), aff'd 85 Wash.2d 810, 539 P.2d 845 (1975), the court remarked:

It is noteworthy that minority alone is a disability which tolls the *general* statute of limitations.... There is no reason why the minor should not be similarly protected when the alleged wrongdoer is a governmental entity. (Our emphasis.)

In *Cook v. State,* 83 Wash.2d 599, 521 P.2d 725 (1974), it was held that a 120-day notice provision, if applied to a 13-year-old plaintiff, would create "an incompatibility with due process and equal protection requirements." The court there explained:

The possibility that a friend or relative may possess the foresight to file a timely claim on behalf of an incapacitated victim, in our view, provides too slender a reed to bridge the inherent discrimination, and it becomes arbitrary and unreasonable when it penalizes the incapacitated if a friend or relative through inadvertence or ignorance fails to act.

*Grubaugh v. City of St. Johns,* 384 Mich. 165, 180 N.W.2d 778 (1970), declared that a 60-day notice requirement in a statute allowing claims against a municipality, without exception for those under any legal disability, was "constitutionally void as depriving [such a] claimant of due process of law." The Michigan court reasoned:

It is axiomatic that the constitutional provision of due process extends to protect that "property" construed to be a vested right and that generally an accrued right of action is a vested property right which may not be arbitrarily impinged.

....

To take away [plaintiff's] cause of action ... because [being under legal disability] he could not meet the notice provisions of the act would deprive him of a vested right of action without due process of law.

(180 N.W.2d at 781, 783.)

It was said also in *McDonald v. City of Spring Valley,* 285 Ill. 52, 120 N.E. 476, at

478 (1918), that a 7-year-old was "incapable of appointing an agent or an attorney . . . . A child with a meritorious cause of action but incapable of initiating any proceeding for its enforcement will not be left to the whim or mercy of some self-constituted next friend to enforce its rights." To apply the notice bar against the child, wrote the court, would deprive the child of due process.

It cannot be doubted that the baby in this case, from the date of her birth until she was a mere eleven months old, was infinitely less able to comply with the statutory 90-day notice requirement of § 41–4–16 than were any of the minor plaintiffs in the above cited cases, or those in *McCrary v. City of Odessa,* 482 S.W.2d 151 (Tex.1972); *Turner v. Staggs,* 89 Nev. 230, 510 P.2d 879 (1973); *City of Barnesville v. Powell,* 124 Ga.App. 132, 183 S.E.2d 55 (1971); *Lazich v. Belanger,* 111 Mont. 48, 105 P.2d 738 (1940). All of these cases reflect the view that one unable to comply with a notice requirement by reason of minority is protected by the reasonableness requirements of the common law, the Fourteenth Amendment to the United States Constitution, or similar provisions in their state constitutions.

The "reasonableness" approach to notice provisions in the above-cited decisions does not differ from the reasonableness approach taken in *Terry v. New Mexico State Highway Comm'n,* 98 N.M. 119, 645 P.2d 1375 (1982), in connection with a statute of limitations. A state may bar a right if a reasonable time is given to enforce that right. There is nothing suggesting the baby was incapacitated from giving notice by reason of injury, § 41–4–16(B); thus the baby was required to give notice under § 41–4–16(A) within 90 days after the occurrence giving rise to the baby's claim. In this case, the claim arose when the baby was born, and the baby was required to give notice not later than the 91st day of her life. In the absence of a provision, *compare* § 41–4–16(C), providing for notice on the baby's behalf, application of the notice provision to the baby is unreasonable and violates due process. We need go no further than this to decide this case and thus we do not consider whether the burden of giving notice could be placed on another or, if it could, who would bear that burden.

*Terry* states: "[I]t is not a judicial function to set appropriate limitations periods." The result here is that there is no notice provision which bars the baby's claim, or which deprives the trial court of jurisdiction to consider the baby's claim because the baby failed to give notice prior to her 91st day of life. The notice requirements of § 41–4–16(A) and (B) may not be applied to bar the baby's claim in this case. Suit having been filed within the limitation provisions of § 41–4–15, the trial court erred in granting summary judgment against the baby's claim.

C. *Claim of both plaintiffs against John Doe.*

5. *Propriety of summary judgment.*

Plaintiff moved to substitute Carl Mays for John Doe after she learned his identity, in April 1982. That motion and the hospital's motion for summary judgment were set down for hearing on May 20, 1982. Without reaching the motion to substitute, the court granted summary judgment "in favor of Defendants." The motion to substitute has yet to be acted upon.

We reverse the summary judgment. Plaintiff's complaint is to be restored upon the court's jury docket and for decision upon the pending motion to substitute.

IT IS SO ORDERED.

WOOD and HENDLEY, JJ., concur.