Carl E. BEELER, Appellant,

v.

Linda Kay VAN CANNON, Rex A.
Bright, Michael Dean Mitchell,
and Madison County, Iowa, Appellees.

No. 84–1634.

Supreme Court of Iowa.

Nov. 13, 1985.

Lewis H. Jordan of Webster, Jordan, Oliver & Walters, Winterset, for appellant.

Richard G. Blane II of Hansen, McClintock & Riley, Des Moines, for appellees.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and WOLLE, JJ.

HARRIS, Justice.

We reject plaintiff's equal protection challenge to the legislature's choice of the effective date for Iowa Code section 668.4 (1985).

In *Goetzman v. Wichern,* we abolished the common law doctrine of contributory negligence and supplanted it with the doctrine of pure comparative negligence. 327 N.W.2d 742, 754 (Iowa 1982). In so doing we reserved for later case-by-case determination a number of collateral issues which, we thought, could "best be addressed and resolved in the context of concrete cases." *Id.*

We soon were called upon to resolve one of the more obvious examples of such a collateral issue. In *Rozevink v. Faris,* we held that the doctrine of joint and several liability had survived *Goetzman* and was "unaffected by our adoption of pure comparative negligence." 342 N.W.2d 845, 850

(Iowa 1983). Our resolution of the issue remained intact for a limited time, however, because the legislature soon reviewed it as a part of its reconsideration of the whole comparative fault concept. *See* 1984 Iowa Acts ch. 1293 (codified at Iowa Code ch. 668 (1985)). One of the provisions in the legislative response to our *Goetzman* decision now appears as Iowa Code section 668.4. It provides:

> In actions brought under this chapter, the rule of joint and several liability shall not apply to defendants who are found to bear less than fifty percent of the total fault assigned to all parties.

The question in this case is whether the statute applies so as to bar joint and several liability against such a defendant.

Plaintiff, Carl E. Beeler, was injured in a car accident in June 1981. In December 1981 he filed this lawsuit against four defendants. The suit was not tried until July 10, 1984. According to plaintiff, the severity of his physical and emotional injury delayed the trial. At trial plaintiff dismissed his action against defendant Bright and the court directed a verdict for defendant Mitchell. Defendant Van Cannon, on the first day of trial, confessed judgment in the amount of $503,225 and costs pursuant to Iowa rule of civil procedure 226. Madison County is therefore the only remaining defendant in this appeal.

The jury found plaintiff to have suffered $150,000 in damages. The jury further found plaintiff 12½% negligent, Madison County 12½% negligent and Van Cannon 75% negligent. Because of section 668.4, however, Madison County was not jointly and severally liable. Thus, plaintiff's judgment against the county was limited to $18,750 (12½% of $150,000). Had joint and several liability applied, plaintiff could have collected $131,250 from Madison County (the entire judgment less plaintiff's comparative negligence). Plaintiff does not directly challenge section 668.4.[1] He does not dispute its effect as a bar to joint and several liability to defendants such as Mad-

ison County. Plaintiff's sole challenge is its effective date:

> This Act, except for section 4, applies to all cases *filed* on or after July 1, 1984. Section 4 of this Act applies to all cases *tried* on or after July 1, 1984.

1984 Iowa Acts ch. 1293, § 15 (emphasis added).

Plaintiff's specific challenge is that section 15 of the Act, both on its face and as applied to him, violates the equal protection clauses of both the federal (14th Amendment) and Iowa (Article I, section 6) Constitutions. He argues:

> [A] classification has been placed ... which allows plaintiffs who were injured prior to July 1, 1984, but because their injuries were less severe ... to go to trial prior to that date, an opportunity to collect all their damages, while those who were injured more severely and because of the nature, extent, and severity of their injuries, were unable to go to trial before July 1, 1984, are denied the right to collect their damages.

We see no reason to distinguish between the equal protection provisions of the state and federal Constitutions. For the purposes of this challenge the provisions are similar. *See Stracke v. City of Council Bluffs,* 341 N.W.2d 731, 733 (Iowa 1983).

## I.

On an equal protection challenge the first question is whether some fundamental right is involved. The answer determines the burden to be borne by the challenger. If no fundamental right is at issue the classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest [authority]. If a fundamental right is at issue the burden is quite different; the state must present a compelling interest which is served by the discrimination [authority].

*Johnson v. Charles City Community Schools Board,* 368 N.W.2d 74, 84–85 (Iowa 1985).

---

**1.** Plaintiff does not contend that his recovery is in any way affected by the last sentence of Iowa Code section 668.7 (1985) ("the claim of [a person giving a release from liability] against other persons is reduced by the amount of the released person's equitable share of the obligation...."). We intimate no views on the effective date of that provision.

■ Although plaintiff contends otherwise we find no claimed violation of a fundamental right. Plaintiff was not denied access to the courts. *See Lunday v. Vogelmann,* 213 N.W.2d 904, 905 (Iowa 1973) (majority rejected contention that municipal tort notice statute denied access to courts and applied rational basis test to equal protection challenge). The plaintiff here was and is in court. Involved is only the continued effectiveness of a common law principle which, though it impacts greatly on the amount of his recovery, does not determine whether he is in or out of court. We therefore apply the rational basis test.

■ This is the test most often applied. *See Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2395, 72 L.Ed.2d 786, 799 (1982) ("[I]n applying the Equal Protection clause to most forms of state action, we . . . seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose"). In applying this standard we are to determine if the classification or distinction drawn by the statute is reasonably related to some legitimate state interest. *Stracke,* 341 N.W.2d at 733–34. The party attacking the classification "has the heavy burden of proving the action unconstitutional, and must negate every reasonable basis upon which the action may be sustained." *Id.* at 734. There is, of course, a strong presumption in favor of the constitutionality of any legislative enactment. *Gleason v. City of Davenport,* 275 N.W.2d 431, 434 (Iowa 1979). It is presumed the legislature intended the statute to comply with both the state and federal constitutions. *Hewett Wholesale, Inc. v. Department of Revenue,* 343 N.W.2d 487, 488 (Iowa 1984); Iowa Code § 4.4(1) (1985).

II. Plaintiff's rational basis argument is based largely on *Harryman v. Hayles,* 257 N.W.2d 631 (Iowa 1977). In *Harryman,* an injured minor and his parents failed to bring suit within three months or give notice within sixty days, as required by Iowa's municipal tort notice statute, section 613A.5 (since amended). The *Harryman* plaintiffs challenged the requirement, pointing to its provision which at the time extended the sixty-day period for giving notice for "a reasonable length of time, not to exceed ninety days, during which the person is incapacitated by his injury from giving such notice."

We were persuaded by Harryman's contention that the extension denied equal protection because there was no rational basis to distinguish between an incapacitation of less than ninety days from one which lasted longer. *Id.* at 634–35.

The complaint of the plaintiff here does not amount to what we condemned as irrational in *Harryman.* The legislative purpose in enacting chapter 668 was to review the concept of comparative fault and to sort through a number of related tort principles, deciding whether they should be changed. Where changes were thought to be in the public interest the legislature was to determine the nature and extent of any change, and its effective date.

We know of no requirement that various changes, even if interrelated and in a single bill, be made effective simultaneously. For reasons of its own, in the political process, the legislature might feel more strongly about some changes than others. It is free to set its own timetable, so long as the same timetable is made to apply, as this one did, to all citizens.

Although it is not controlling we mention that common law changes we ourselves initiate are frequently made effective for cases to be tried in the future. For example, the adoption of comparative fault was made to apply to "all cases tried or retried" after the filing of our opinion in *Goetzman,*[2] 327 N.W.2d at 754. Other examples could be cited and were available to the legislature when it selected future trial dates for the effective date of section 668.-4.

■ It seems inevitable that a number of litigants will be adversely affected by any

---

**2.** It also applied to "all pending cases, including appeals, in which the issue [had] been pre-

served." *Id.*

change of law. This is a matter which weighs heavily in the consideration of any change. The legislative body or the court which undertakes a change must exercise its best judgment about which point in time would result in the most justice for the most persons. Future trials are a frequent and acceptable point. Here the legislature went so far as to delay the effective date until trials after a specified later date (July 1, 1984). This was entirely rational. There was no violation of equal protection.

AFFIRMED.