Crystal MILLER, Individually and next friend of Aaron Miller, a minor, Appellant,

v.

BOONE COUNTY HOSPITAL, Boone, Iowa, Appellee.

No. 85–1275.

Supreme Court of Iowa.

Oct. 15, 1986.

Rehearing Denied Nov. 7, 1986.

Lylea M. Dodson and Nick Critelli, Des Moines, for appellant.

Robert C. Rouwenhorst and Eugene Davis of Davis, Grace, Harvey, Horvath, Gonnerman & Rouwenhorst, Des Moines, for appellee.

LAVORATO, Justice.

Iowa Code chapter 613A (1983) governs tort claims against local governments. Section 613A.5 requires a person claiming damages to commence an action within six months after injury or cause a written notice to be presented to the local government within sixty days after injury.[1] Thirteen years ago we held that section 613A.5

---

1. Section 613A.5 provides:

   Every person who claims damages from any municipality or any officer, employee or agent of a municipality for or on account of any wrongful death, loss or injury within the scope of section 613A.2 or section 613A.8 or under common law shall commence an action therefor within six months, unless said person shall cause to be presented to the governing body of the municipality within sixty days after the alleged wrongful death, loss or injury a written notice stating the time, place, and circumstances thereof and the amount of compensation or other relief demanded. Fail-

   ure to state time or place or circumstances or the amount of compensation or other relief demanded shall not invalidate the notice; providing, the claimant shall furnish full information within fifteen days after demand by the municipality. No action therefor shall be maintained unless such notice has been given and unless the action is commenced within two years after such notice. The time for giving such notice shall include a reasonable length of time, not to exceed ninety days, during which the person injured is incapacitated by his injury from giving such notice.

did not deny equal protection of the law by classifying victims of governmental torts differently from victims of private torts. *Lunday v. Vogelmann*, 213 N.W.2d 904, 908 (Iowa 1973). Victims of governmental torts are subject to the special notice requirement whereas victims of private torts are not. In upholding the constitutionality of the statute, we said that

> [t]he fundamental motivation attributed to legislatures which have enacted such notice requirements is that where a governmental subdivision is involved the public has an interest it does not have as to claims against private persons in seeing prompt and thorough investigation of claims is made. This protects the public treasury from stale claims. It permits prompt settlement of meritorious claims and facilitates planning of municipal budgets. The notice requirement also ensures that notices reach the public officers with responsibility to deal with them and in many instances should enable such officers to remedy defects in far-flung municipal property before other persons are injured. We are unable and unwilling to say § 613A.5 is patently arbitrary and bears no rational relationship to a legitimate governmental interest.

213 N.W.2d at 907–08 (citations omitted). Today, we revisit the issue, and we reexamine the reasons for our holding.[2]

Plaintiff Crystal Miller, individually and on behalf of her injured son, argues the notice requirement violates equal protection because it creates an impermissible class: plaintiffs injured by local governments vis-a-vis plaintiffs injured by private tort-feasors.

Aaron was eighteen-months-old when his mother noticed he had a high fever. She sought advice from personnel employed by the defendant, Boone County Hospital. Later that day, she apparently received and followed contrary medical advice from other persons. Nearly two years later she filed a petition against the defendant. She alleged its personnel negligently failed to recommend immediate treatment for her son, causing his severe injuries and damages to both plaintiffs. Because the plaintiffs did not comply with the notice provision of section 613A.5, however, the district court granted the defendant's motion for summary judgment, Iowa R.Civ.P. 237. The plaintiffs have now appealed, and we reverse and remand.

## I. *Governmental immunity.*

The origins and underlying purposes of notice requirements are rooted in governmental immunity, and may be viewed as a partial substitute for it. W. Prosser & W. Keeton, *The Law of Torts* § 131, at 1043, 1045–46 (5th ed. 1984); Note, 60 Cornell L.Rev. 417, 419, 422 (1975). This doctrine has been severely criticized by modern courts and commentators:

> Since [governmental] immunity eliminates suits against the state for torts, which, if committed by private parties, would probably be actionable, it has been characterized as both unjust and incompatible with the American governmental-legal system. This characterization is bolstered by three important facts. First, the United States is not governed by a monarch (who the English have said can do no wrong). Second, the American sovereign power belongs not to the government, but to the people. Third, and most important from a legal standpoint, some jurisdictions have openly acknowledged that private citizens have a fundamental right to seek redress in tort from whomever inflicts a wrong, including the state.

Note, 60 Cornell L.Rev., *supra*, at 421 (footnotes omitted); *see Muskopf v. Corning Hospital District*, 55 Cal.2d 211, 213, 216, 359 P.2d 457, 458, 460, 11 Cal.Rptr. 89, 90, 92 (1961); *Boyer v. Iowa High School Athletic Association*, 256 Iowa 337, 349, 127 N.W.2d 606, 613 (1964) (Moore, J., dissenting); Note, 56 Iowa L.Rev. 930, 930,

---

**2.** Because of our reasoning under equal protection, we need not address the plaintiffs' argument that section 613A.5 also violates due process. *See Harryman v. Hayles,* 257 N.W.2d 631, 635 (Iowa 1977).

933–35 (1971); Note, 16 Drake L.Rev. 35, 38 (1966); Comment, 50 Iowa L.Rev. 226, 227 n. 5 (1964).

Our court embraced immunity for the State, on common law grounds, without question. *See Metz v. Soule, Kretsinger & Co.,* 40 Iowa 236, 239–40 (1875). Local governments were held liable, however, for the negligence of their employees performing "proprietary" functions. *See, e.g., Iseminger v. Black Hawk County,* 175 N.W.2d 374, 380 (Iowa 1970); *Wittmer v. Letts,* 248 Iowa 648, 652, 80 N.W.2d 561, 563 (1957); *Florey v. City of Burlington,* 247 Iowa 316, 321, 73 N.W.2d 770, 772 (1955); Petz, *Survey of Iowa Law—Some Tort-Related Statutes,* 23 Drake L.Rev. 603, 615·(1974); Note, 11 Drake L.Rev. 79, 89 (1962); Note, 9 Drake L.Rev. 41, 42–43 (1959). While eventually recognizing the shortcomings of governmental immunity, we left its abrogation to the legislature, despite its judicial origin. *See, e.g., Boyer,* 256 Iowa at 348, 127 N.W.2d at 612–13.

In 1965, the legislature abolished immunity for the State. *See* Iowa Code ch. 25A. Two years later it enacted chapter 613A, after we held in *Graham v. Worthington,* 259 Iowa 845, 854–55, 146 N.W.2d 626, 633 (1966) that the State's political subdivisions were not covered by the 1965 act.

The court in *Sprung v. Rasmussen,* 180 N.W.2d 430, 433 (Iowa 1970) incorrectly characterized Section 613A.5 as a statute of creation rather than a statute of limitations. With the greater power to create a right of action, it was thought, comes the lesser power to condition it:

> Where, as here, the legislature has created a new right of action, it made a legislative judgment that the cause should be brought within a specified time. This difference doubtlessly arises from the fact the statute ... is in derogation of sovereign immunity and that the legislature might, and did, properly restrict and limit the application of the statute.

180 N.W.2d at 433; *accord Harryman,* 257 N.W.2d at 636; *Dan Dugan Transport Co.*

*v. Worth County,* 243 N.W.2d 655, 657 (Iowa 1976); *Lunday,* 213 N.W.2d at 907.

Whether or not a right of action was created in chapter 613A is irrelevant to the constitutionality of its notice requirement. *See Turner v. Staggs,* 89 Nev. 230, 239, 510 P.2d 879, 885 (1973) (Zenoff, J., concurring); Note, 60 Cornell L.Rev., *supra,* at 440. *Cf. Turner v. Turner,* 304 N.W.2d 786, 787 (Iowa 1981) ("to the extent [parental] immunity is abrogated it does not create a new liability.... [but] merely removes a judicially imposed barrier to recovery"). We should not conclusively presume, as *Lunday* implied by quoting *Sprung,* 213 N.W.2d at 907, the provisions of chapter 613A are constitutional merely because they resulted from *legislative* enactment. With one justice changing his vote, the court in *Boyer* would have abrogated immunity of local governments three years earlier than did the legislature. Thus, "there is no sanctity" to the notice requirement. *O'Neil v. City of Parkersburg,* 237 S.E.2d 504, 507 (W.Va.1977).

To defer to the legislature because it has provided liability for the negligence of the State's political subdivisions is to say *every* condition imposed, no matter how harsh, may never be questioned. The analysis in *Sprung* and its progeny begs the question of constitutionality.

## II. *Equal protection.*

The plaintiffs argue that in creating the class,[3] section 613A.5 violates the equal protection clauses of both the federal (14th amendment) and Iowa (Article I, section 6) constitutions. We have interpreted both constitutional provisions similarly. *See Beeler v. Van Cannon,* 376 N.W.2d 628, 629 (Iowa 1985).

As we did in *Lunday,* we apply the rational basis test. 213 N.W.2d at 907. In applying the standard

> we are to determine if the classification or distinction drawn by the statute is reasonably related to some legitimate state interest. The party attacking the

---

3. Plaintiffs injured by local governments vis-a-vis plaintiffs injured by private defendants.

classification has the heavy burden of proving the action unconstitutional, and must negate every reasonable basis upon which the action may be sustained. There is, of course, a strong presumption in favor of the constitutionality of any legislative enactment. It is presumed the legislature intended the statute to comply with both the state and federal constitutions.

*Beeler*, 376 N.W.2d at 630 (citations omitted). In examining the claimed interests of a statute, our focus is on whether they are realistically conceivable. Moreover, when examining the provisions of section 613A.5, we should consider what we said in *State v. Bartels*, 191 Iowa 1060, 1073, 181 N.W. 508, 515 (1921): "For the purpose of ascertaining whether or not the classification is arbitrary and unreasonable, we must take into consideration matters of common knowledge and common report and the history of the times."

Almost one hundred years ago the legislature enacted its first notice requirement for claims against a local government. 1888 Iowa Laws § 25.1 (22nd G.A.) (for actions based on defective streets or sidewalks). Presumably this statute was the model for section 613A.5. According to *Lunday*, 213 N.W.2d at 907–08, section 613A.5 was enacted to protect local governments' treasuries from stale claims, and facilitate prompt settling of valid claims, planning of budgets, and repair of defective conditions. *Accord Harrop v. Keller*, 253 N.W.2d 588, 592–93 (Iowa 1977); *Shearer v. Perry Community School District*, 236 N.W.2d 688, 692 (Iowa 1975); *Norland v. Mason City*, 199 N.W.2d 316, 318 (Iowa 1972).

Section 613A.5 requires a person claiming damages to commence an action within six months after injury or cause a written notice to be presented to the local government within sixty days after injury. The plaintiffs argue this requirement is unconstitutional because it creates an impermissible class: plaintiffs injured by local governments vis-a-vis plaintiffs injured by private tort-feasors.[4]

In light of present day conditions, does the classification in issue bear any rational relationship to the interests underlying section 613A.5? Regarding the interests our earlier cases found to underlie section 613A.5, it has been said they "have more basis in judicial conjecture than [in] actuality." Case Note, 23 Drake L.Rev. 696, 703 (1974). Moreover, the statute does not further these interests. We have, in *Lunday* and subsequent cases, "ignored what common knowledge tells us." Case Note, 23 Drake L.Rev., *supra*, at 705.

With regard to the four interests mentioned in *Lunday*, we make the following observations.

(*1*). Stale claims. While local governments may have broad exposure, that of certain private persons or entities may be even greater. *See Hunter v. North Mason High School*, 85 Wash.2d 810, 816, 539 P.2d 845, 849 (1975). The general statute of limitations would protect local governments from stale claims in the same manner as it protects the private sector. *See* Case Note, 23 Drake L.Rev., *supra*, at 705. The odds may even be in favor of local governments, who have police departments, attorneys and other personnel at their disposal to investigate the causes and effects of accidents. *See* 17 E. McQuillin, *The Law of Municipal Corporations* § 48.02, at 48 (3d ed. 1982); *see also Hunter*, 85 Wash.2d at 816, 539 P.2d at 849. And, because plaintiffs bear the burden to prove negligence, any difficulty in proof in cases arising after sixty days would beset them as well as defendants. *See* 4 F. Harper, F. James & O. Gray, *The Law of Torts* § 24.7, at 484 n. 9 (2d ed. 1986); *see also Gallegos v. Midvale City*, 27 Utah 2d 27, 34, 492 P.2d 1335, 1340 (1972) (Ellett, J., dissenting).

(*2*). Planning of budgets. Local governments "rarely budget for claims but carry liability insurance as the statutes per-

---

**4.** Iowa Code § 614.1(2) allows adults two years to file lawsuits against private tort-feasors. Iowa Code § 614.8 allows minors up to one year after attaining majority to file such suits.

mit...." Case Note, 23 Drake L.Rev., *supra,* at 705; *accord Lunday,* 213 N.W.2d at 910 (Reynoldson, J., dissenting); 17 McQuillin, *supra,* § 48.02, at 48; Gibbons, *Liability Insurance and the Tort Immunity of State and Local Government,* 1959 Duke L.J. 588, 605; Comment, 6 Pac.L.J. 30, 55 (1975). Insurance is usually purchased because local governments, comprising small populations, are unable to use actuarial methods to forecast liabilities and to self-insure. *Hunter,* 539 P.2d at 849. The public policy of the Victorian age, which frowned on the idea of insurance, no longer exists. *See* Prosser & Keeton, *supra,* § 82, at 585–86. The legislature clearly contemplated local governments would purchase liability insurance to protect themselves. *See* Iowa Code § 613A.7.

(*3*). Settling of valid claims. The extent of a person's injuries is often unknown for months, and settlement is unlikely to occur under such circumstances. *See* Note, 37 Mont.L.Rev. 206, 214 (1976). "Medicine is not a field of absolutes," and "has not reached the stage where a physician may always confidently pinpoint the specific ... injury of a patient," *Estate of Smith v. Lerner,* 387 N.W.2d 576, 581–82 (Iowa 1986), or make an accurate prognosis, *see generally Oliver v. Sioux City Community School District,* 389 N.W.2d 665, 669 (Iowa 1986).

(*4*). Repair of defective conditions. It is unreasonable to suppose that the government's ability to discover and repair defective conditions is tied to a notice that a lawsuit will be filed. A defective condition should concern the government without regard to whether a lawsuit against it is contemplated. Local governments regularly react to that concern, but not because of a sixty-day notice under the statute. Experience teaches otherwise. In the routine case under the statute, the government's insurer has promptly completed a thorough investigation whereas the injured citizen does not consult an attorney until after sixty days have passed. To apply section 613A.5 in such a case would be grossly unfair and would not lead, in any way, to a more speedy repair of the defect. More-over, if repair of defective conditions were a legitimate interest, the legislature would have required notice of them whenever a person is injured, regardless of the tort-feasor or any intent to file a claim. *Cf.* Iowa Code § 321.266 (requiring reporting of car accidents, involving injury or death, by driver).

In view of these observations, we hold that these interests no longer furnish any rational basis justifying the classification resulting from section 613A.5. Failure to commence an action within six months unless a notice is given within 60 days arbitrarily bars victims of governmental torts while victims of private torts suffer no such bar. We conclude such arbitrary treatment violates the equal protection guarantees of our federal and state constitutions. In reaching this conclusion, we have not lost sight of the fact that statutes carry a strong presumption of constitutionality. On the other hand, rather than furthering a legitimate governmental interest, the statute has proved to be a trap for the unwary. *See Lunday,* 213 N.W.2d at 911–12 (Reynoldson, J., dissenting).

We are also mindful that we are rejecting reasoning that has supported the constitutionality of section 613A.5 for thirteen years. Faced with a similar situation and a similar statute, one court appropriately noted that the shift in reasoning

is an example of the continual reexamination of rationales and principles that is necessary in constitutional decisionmaking. "The present has a right to govern itself, so far as it can ... Historical continuity with the past is not a duty, only a necessity." O. Holmes, *Collected Legal Papers* 139 (1920). Judges operating in the present, searching for constitutional guidance, cannot find in that document itself many specific rules for the application of its principles. The constitution fails to speak with specificity on most of the subjects on which we must turn to it. This, in itself, is a source of its strength, longevity and vitality.

*Hunter*, 539 P.2d at 851 (rejecting dictum in prior decision that a statute similar to section 613A.5 did not violate equal protection). We, too, believe the present has a right to govern itself. In our quest to seek the ill-defined parameters of the equal protection clause, we have reexamined the traditional interests put forth as justification for section 613A.5, and have found them totally lacking in substance in today's circumstances. We therefore join those jurisdictions that have likewise concluded there is no rational basis for legislation like section 613A.5. *See Reich v. State Highway Department*, 386 Mich. 617, 623–24, 194 N.W.2d 700, 702 (1972); *Turner v. Staggs*, 89 Nev. 230, 235, 510 P.2d 879, 882 (1973), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973); *Hunter*, 85 Wash.2d at 818–19, 539 P.2d at 850; *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504, 508 (1977).

To the extent that *Argenta v. City of Newton*, 382 N.W.2d 457 (Iowa 1986); *Franks v. Kohl*, 286 N.W.2d 663 (Iowa 1979); *Harryman v. Hayles*, 257 N.W.2d 631 (Iowa 1977); *Shearer v. Perry Community School District*, 236 N.W.2d 688 (Iowa 1975) and *Lunday v. Vogelmann*, 213 N.W.2d 904 (Iowa 1973) are inconsistent with this opinion, they are hereby overruled.

Finally, because section 613A.5 is unconstitutional, we hold that Iowa Code chapter 614 is the applicable statute of limitations for all actions arising under chapter 613A.

For the reasons stated, we conclude the district court erred in sustaining defendant's motion for summary judgment, and thus remand this case for further proceedings on plaintiffs' petition.

REVERSED AND REMANDED.

All Justices concur except WOLLE, McGIVERIN, SCHULTZ and CARTER, JJ., who dissent.

WOLLE, Justice (dissenting).

I would affirm the district court's grant of summary judgment for defendant. There is no more merit in this plaintiff's attack on the constitutionality of Iowa Code section 613A.5 than in the many challenges we previously have rejected. *See Argenta v. City of Newton*, 382 N.W.2d 457, 460–62 (Iowa 1986) (due process and equal protection challenges rejected); *Harryman v. Hayles*, 257 N.W.2d 631, 634–35 (Iowa 1977) (facial due process challenge rejected and equal protection challenge blunted by granting incapacitated persons sixty days from termination of incapacity to give notice); *Shearer v. Perry Community School District*, 236 N.W.2d 688, 692–93 (Iowa 1975) (minor's due process and equal protection challenges rejected); *Lunday v. Vogelmann*, 213 N.W.2d 904, 906–08 (Iowa 1973) (minor plaintiff's equal protection challenge rejected). I would follow those relatively recent decisions of this court, not overrule them.

I agree with the first two steps the majority takes in analyzing this plaintiff's argument based on the equal protection provisions in the Iowa and United States Constitutions. The requirements of state and federal equal protection clauses are in this instance the same and call for similar interpretation. Also, the traditional rational basis test, not heightened or strict scrutiny, is the appropriate standard for us to apply. The classification challenged here is not based upon sex, race, alienage, or national origin, and no other suspect classification or fundamental right is involved. *See MRM, Inc. v. City of Davenport*, 290 N.W.2d 338, 340–42 (Iowa 1980).

I disagree with the majority's conclusion that this statute does not satisfy the appropriate rational basis test. That test has perhaps most clearly been articulated by our court in *City of Waterloo v. Selden*, 251 N.W.2d 506 (Iowa 1977), where we said:

All presumptions are in favor of the constitutionality of the statute and it will not be held invalid unless it is clear, plain and palpable that such decision is required. The legislature may pass any kind of legislation it sees fit so long as it does not infringe the state or federal constitutions. Courts do not pass on the

policy, wisdom, advisability or justice of a statute. The remedy for those who contend legislation which is within constitutional bounds is unwise or oppressive is with the legislature.... Plaintiffs have the burden to demonstrate beyond a reasonable doubt the act violates the constitutional provision invoked and to point out with particularity the details of the alleged invalidity. To sustain this burden plaintiffs must negative every reasonable basis which may support the statute. Every reasonable doubt is resolved in favor of constitutionality.

*Id.* at 508 (citations omitted); *accord John R. Grubb, Inc. v. Iowa Housing Finance,* 255 N.W.2d 89, 95 (Iowa 1977) ("One who challenges a statute on this [equal protection] ground must negate every conceivable basis which may support the classification, and the classification must be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest."). Our task is to determine whether the plaintiff met her burden to prove beyond a reasonable doubt that the statute classification attacked is "wholly irrelevant to the achievement of the State's objective." *Rudolph v. Iowa Methodist Medical Center,* 293 N.W.2d 550, 557–58 (Iowa 1980) (quoting *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961)).

The classification which the majority finds unacceptable arose in 1968 when the legislature enacted Iowa Code chapter 613A, "Tort Liability of Governmental Subdivisions," and subjected those tort claims to limitations different than the limitations in chapter 614. Injured victims of torts committed by private persons ordinarily have two years from when their causes of action accrue within which to commence their actions, and they may have twenty years or longer in the case of an infant or mentally ill person for whom the limitation period is tolled. Iowa Code §§ 614.1(2), .8 (1985). Victims of similar torts committed by governmental subdivisions must either file suit within six months or serve written notice of claim within sixty days and file suit within two years, except for persons incapacitated by the injury. *Id.* § 613A.5 (1985). That was precisely the same classification at issue in *Lunday,* where we affirmed dismissal of a minor's late-filed claim after holding section 613A.5 constitutional. 213 N.W.2d at 907. The sound reasoning in *Lunday* bears repeating, even though today it is overruled:

The fundamental motivation attributed to legislatures which have enacted such notice requirements is that where a governmental subdivision is involved the public has an interest it does not have as to claims against private persons in seeing prompt and thorough investigation of claims is made. This protects the public treasury from stale claims. *Thomann v. City of Rochester,* 230 App.Div. 612, 245 N.Y.S. 680 (1930). It permits prompt settlement of meritorious claims and facilitates planning of municipal budgets. *King v. Johnson,* 47 Ill.2d 247, 265 N.E.2d 874 (1970). The notice requirement also ensures that notices reach the public officers with responsibility to deal with them and in many instances should enable such officers to remedy defects in far-flung municipal property before other persons are injured.

We are unable and unwilling to say § 613A.5 is patently arbitrary and bears no rational relationship to a legitimate governmental interest. Plaintiff has not met his burden to prove the statute is unconstitutional.

*Id.* at 907–08.

The majority opinion includes observations on the several governmental interests quoted above from the *Lunday* rationale. I offer quite different observations which lend support to my view that section 613A.5 bears a rational relationship to several legitimate governmental interests and satisfies our traditional rational basis test.

There is a close interrelationship among the first three public interests mentioned in *Lunday* and discussed in the majority opinion—avoidance of stale claims, planning of budgets, and settling of valid claims. My observations on each apply to all.

There is certainly a rational connection between section 613A.5 and all three of those factors. We have long recognized that statutes of limitation have been enacted "to afford security against stale demands, after the true state of the transaction may from a variety of causes, be either forgotten, or rendered incapable of explanation." *Penley v. Waterhouse*, 3 Iowa 418, 441 (1856). "The public has a legitimate interest in limiting time for bringing suits." *Conner v. Fettkether*, 294 N.W.2d 61, 63 (Iowa 1980). By fixing at six months the time within which most victims of governmental subdivision torts must submit a written notice or file suit, the legislature has declared that other claims are stale—too easily forgotten, more difficult to investigate and settle fairly—and certainly more difficult to work into the governmental subdivision's annual budget. *See Argenta*, 382 N.W.2d at 461 (emphasizing importance of written notice to promote accurate reporting and prompt investigation); *Farnum v. G.D. Searle & Co., Inc.*, 339 N.W.2d 392, 397 (Iowa 1983) (emphasizing importance of budgeting requirements and fiscal constraints).

The majority opinion comments that the general statute of limitations would protect local governments from stale claims in the same manner it protects the private sector. I am not sure that is true either as a matter of fact or law. Plaintiff offered no evidence, nothing even in the way of a Brandeis brief, from which we might compare factually the problems private tortfeasors and governmental subdivisions have in dealing with stale claims, investigation of claims, and the budget process. The heavy burden to prove an unconstitutional classification was of course on the plaintiff. Moreover, enterprising counsel may well assert that as a matter of law Iowa Code chapter 614 offers no protection whatsoever to governmental subdivisions because the legislature intended section 613A, rather than any part of chapter 614, to provide applicable limitations on bringing suit. *See* Iowa Code § 614.1 (chapter inapplicable "when otherwise specially declared").

The majority suggests there is no budget problem for the public treasury because local governments carry liability insurance and rarely budget for claims. This summary judgment record does not mention liability insurance. It does not even show whether this defendant, Boone County Hospital, had liability insurance covering this 1983 incident. Plaintiff has demonstrated nothing about the extent to which Iowa's many governmental subdivisions have purchased liability insurance, how the costs of liability insurance may affect annual budgets of governmental subdivisions, or how the demise of section 613A.5 may impact the costs or availability of insurance. Purchase of liability insurance by governmental subdivisions in Iowa is permissive, not mandatory. *See* Iowa Code §§ 347.14(9), 517A.1, 613A.7 (1985). We do know our legislature this year enacted legislation which recognizes that governmental subdivisions, as well as certain other public and private institutions, face a serious financial problem resulting from exposure to risks, including tort claims. *See* 8 Iowa Legis. Serv. 16 (West 1986) (comprehensive legislation amending several statutes concerning liability insurance and self-insurance for governmental units and establishing commission "to study the issues involved in liability and liability insurance concerns"). That legislation constitutes a legislative finding that the problems of risk exposure facing governmental subdivisions are different, and call for different solutions, than the risk exposure facing other potential tort claim defendants. When the legislature has found from its investigations and studies that the exposure of governmental subdivisions to risks is of a different character than the exposure of private persons or entities, we are bold indeed to declare—in a case whose record is devoid of evidence—that the general statute of limitations would protect local governments from stale claims in the same manner it protects the private sector.

Unlike the majority, I must express my concern about "the carry-over to subsequent [governmental subdivision] adminis-

trations of responsibility for accidents that may have previously occurred...." *Gallegos v. Midvale City*, 27 Utah 2d 27, 30, 492 P.2d 1335, 1337 (1972) (emphasizing problems with stale claims and budgeting concerns in rejecting by 4–1 vote minor victim's equal protection challenge to thirty-day notice provision). Two separate categories of unreported claims immediately concern me. Iowans living in governmental subdivisions in Iowa twenty years or more from now will be required to investigate and settle or litigate claims arising from today's torts that are unreported until after the turn of the century. Moreover, the majority opinion apparently is to be given retrospective as well as prospective effect, so the second category of carried-over claims will be those occurring in years past that were thought barred but now may be dropped upon today's unsuspecting administrators and taxpayers.

In addition to these concerns about stale claims and governmental subdivision budgets which section 613A.5 addresses, the public has a real interest, listed in *Lunday*, in ensuring that public officers receive early written notice of claims so they can "remedy defects in far-flung [public] property before other persons are injured." 213 N.W.2d at 908. Not just the public treasury but individual members of the public are protected by this statute when it results in notices and corrective action sooner rather than later. Governmental subdivisions have the authority and responsibility to take remedial action concerning their own activities and property, but they have no such authority and responsibility concerning tortious activities and defects in property of private entities. The classification here attacked—disparate notice and suit limitations governing actions against public and private tortfeasors—is rationally related to that public interest apart from fiscal concerns of governmental subdivisions.

The majority states "experience teaches" that local governments regularly react to, discover, and repair defective conditions without regard to whether and when a notice of lawsuit is filed. Nothing in the record supports that statement, and I would not take judicial notice that it is true. The majority also declares that if repair of defective conditions were a legitimate concern the legislature would have enacted a different and more far-reaching statutory obligation imposed on all victims of torts. I believe, however, our obligation is to determine whether section 613A.5 itself is rationally related to and serves legitimate public interests, not whether a different and arguably more effective statute should have been enacted. *See City of New Orleans v. Dukes*, 427 U.S. 297, 304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976) ("In short, the judiciary may not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ...").

In its overview of these public interests served by Iowa Code section 613A.5, the majority opinion observes that "in light of present day conditions" these purposes "no longer furnish any rational basis justifying the classification resulting from section 613A.5." When the majority states that the interests are "totally lacking in substance in today's circumstances," it implies that yesterday's circumstances were different and did provide a rational basis for the requirements of section 613A.5. This record provides no factual basis whatsoever for the majority to conclude that relevant circumstances have changed. The statute has been in effect only since 1968. What circumstances have changed since then? Do governmental subdivisions investigate and settle claims differently today than in 1968? Governmental subdivisions have the same authority to purchase liability insurance today that they had in 1968, but this record does not demonstrate that more are now insured or that liability insurance is more available or less costly today than when section 613A.5 was enacted.

A majority of other jurisdictions have rejected equal protection challenges to statutes like Iowa Code section 613A.5, finding a rational relationship between such stat-

utes and the public interests here discussed. *See Farnum,* 339 N.W.2d at 397 (cataloging cases from other jurisdictions which constitute "persuasive authority for upholding the differential treatment" of section 613A.5); *Budahl v. Gordon & David Assoc.,* 287 N.W.2d 489, 492 (S.D. 1980) ("We believe we follow the weight of authority in saying that the [60 day statute] does bear a rational relationship to the legislation's purpose"). In the most recent case addressing this issue, the Pennsylvania Supreme Court rejected an equal protection argument against the classification created by a claim notice statute, finding a rational basis even after determining that it should apply not the ordinary rational basis test but "heightened scrutiny." *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 148, 477 A.2d 1302, 1307 (1984).

Although several jurisdictions have found all or parts of written notice statutes like Iowa Code section 613A.5 constitutionally infirm, those cases represent a minority view and I disagree with their reasoning. *See Tafoya v. Doe,* 100 N.M. 328, 331–32, 670 P.2d 582, 585–86 (Ct.App.1983) (application of notice provision of Tort Claims Act to infant was violative of due process, at least in absence of provision in statute for notice to be given on infant's behalf); *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 237 S.E.2d 504, 508–09 (1977) (notice of claim provision facially violative of due process and equal protection rights); *Hunter v. North Mason High School,* 85 Wash.2d 810, 814–20, 539 P.2d 845, 848–51 (1975) (municipal tort claims statute facially violates equal protection); *Turner v. Staggs,* 89 Nev. 230, 234–36, 510 P.2d 879, 882–83, *cert. denied,* 414 U.S. 1079, 94 S.Ct. 598, 38 L.Ed.2d 486 (1973) (notice of claim requirements in statute requiring the presentation of a claim against county within six months of occurrence facially denies equal protection and violates right of minor to due process); *Reich v. State Highway Department,* 386 Mich. 617, 622–24, 194 N.W.2d 700, 702 (1972) (sixty day notice provision of tort claim statute facially violates equal protection). It is noteworthy that the majority holds section 613A.5 unconstitutional on its face and does not accept the plaintiff's alternative invitation to declare the statute unconstitutional only as it would apply to claims of minors. We previously followed the latter course in holding this statute facially constitutional but invalid as applied to a plaintiff whose incapacity extended beyond ninety days. *Harryman,* 257 N.W.2d at 634–35.

In my view the plaintiff's other assignments of error are equally without merit. This eighteen month old infant's injuries did not create a condition incapacitating him from giving notice because he plainly could not have given written notice regardless of his injuries. His due process arguments are not unlike those challenges we recently rejected in *Koppes v. Pearson,* 384 N.W.2d 381, 385 (Iowa 1986) (holding Iowa Code § 614.1(9) constitutional), and *Argenta,* 382 N.W.2d at 461–62 (holding section 613A.5 satisfied due process).

Our precedents upholding the facial constitutionality of Iowa Code section 613A.5 are sound and should be followed, not overruled. We should require more persuasive reasons than those presented in this record before we overrule very recent cases and in the process invalidate a statute which rationally furthers important public interests of governmental subdivisions in Iowa.

I would affirm the district court's grant of summary judgment for the defendant Boone County Hospital.

McGIVERIN, SCHULTZ and CARTER, JJ., join this dissent.