CADY, Chief Justice
(concurring specially).
I concur in the opinion of the majority. I write separately to explain my unwillingness at this time to more fully explore the constitutional claim of a public education in Iowa and to further explain my position on the issues in this case.
' At the outset, I feel compelled to acknowledge that education is a tradition that exists today as strongly as ever. A system of public education is clearly needed to allow the youth of this state to learn the essential aspects of judgment, analysis, communication, and creativity. It is needed to empower each generation to meet the economic, social, scientific, political, governmental, personal, and other challenges of an evolving global world. Education is the core of who we are and who we will become. The dissenting opinion of Justice Appel has captured the rich history of this tradition in Iowa and has provided insight into its constitutional stature.
Yet, in response to the specific claim of a constitutional right under the education clause raised in this case, I am restrained at this time from deciding anything more than that section 8 of the second division of article IX of the Iowa Constitution does not alone create a right to a public education. This conclusion is not to say no such right exists under the Iowa Constitution, but I am content to wait for a different case in which the petition both frames the full constitutional underpinnings and is accompanied by pleadings that would allow the underlying facts of the case to become a helpful aid in shaping the parameters to any such right recognized to exist. Of course, in this case, as pointed' out by Justice Wiggins, the more fundamental obstacle presented is whether this extremely *37 important issue should even be addressed by us when the parties chose, at least initially, not to raise it as an issue for appellate review after it was presented and decided by a district court.
The doctrine of judicial restraint expressed by Justice Wiggins is a view I would normally follow. Yet, our rules of judicial restraint are full of nuance and exceptions and ultimately rest on the particular circumstances of each case. As observed in the majority opinion, the principles of judicial restraint also embrace judicial economy, a doctrine particularly applicable to this case. If the allegations of a case would not be sufficient to establish a claim, assuming they were all true, judicial economy would not be served by sending the case back for the parties to go through the time and expense of further proceedings only for the courts to later declare the plaintiff never had a viable claim in the first place.
Judicial restraint is a doctrine composed of many elements, and it strives for outcomes that are both fair and practical. In this case, it is both fair and practical for us to examine the pleadings to determine if the plaintiffs could ever win their lawsuit if we declared the educational experience mandated by the legislature in this state was a constitutional right. It is fair because the parties fully explored this issue before the district court, and it was ultimately raised and urged at rehearing on appeal. It is practical because the case is before us, and it is in the best interests of all concerned for us to decide the merits of the underlying claim now. Thus, under the particular procedural background of this case, I conclude the doctrine of judicial restraint does not instruct us to refrain from deciding the basic question whether or not the plaintiffs have failed to state a claim for relief. Accordingly, it is appropriate to decide if the allegations are sufficient to support a violation of a fundamental right to an adequate education.
Normally, cases are not resolved on the pleadings. U.S. Bank v. Barbour, 770 N.W.2d 350, 353 (Iowa 2009). Moreover, we do not set a high bar for litigants to clear to meet the requirement for a pleading to state a claim for relief. Id. at 354 (noting the “fair notice” requirement is met if a petition informs the defendant of the incident giving rise to the claim and the claim’s general nature). Instead, we follow the libéral rule of notice pleading. This rule, however, does not mean all claims clear the bar. See O'Brien v. DiGrazia, 544 F.2d 543, 546 n. 3 (1st Cir.1976) (noting that, when plaintiff in civil rights action provides facts to support claim, court does not have duty to “conjure up unpleaded facts that might turn a frivolous claim of unconstitutional official action into a substantial one”); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 548-53 (3d ed.2004) (noting courts “will accept the pleader’s description of what happened to him or her along with any conclusion that can reasonably be drawn therefrom,” but will not accept “conclusory allegations concerning the legal effect of the events the plaintiff has set out if these allegations do not reasonably follow from the pleader’s description of what happened”).
When the viability of a claim for relief is challenged, our pleading rule requires consideration of any conceivable set of facts, but only those facts that relate to and could prove the allegations made in the petition. The allegations of the petition, if proven by the facts, must show entitlement to relief. Reviewing courts do not, however, consider any conceivable allegations, only any conceivable facts that support the allegations made.
*38 In this case, the allegations of the petition, even if true, could not establish that students in Iowa today are being denied a basic or minimally adequate education, wherever that elusive standard might land. The plaintiffs have not made a single allegation that could establish they have been deprived of the basic ability to read, write, or communicate, and they have not alleged they have been deprived of their ability to gain an understanding of mathematics, science, economics, government, computer-based technology, or other vital components of a basic education. While the allegations in the petition are detailed and thoughtful, they simply do not show Iowa students are being deprived of an opportunity for an adequate education. For example, the disparities alleged to exist between school districts across Iowa may show slightly different education experiences and outcomes, but those different outcomes do not establish a deprivation of basic education.
Likewise, Iowa’s recent decline of college admissions test scores and other proficiency scores do not establish a deprivation of basic education. They merely show the state may have begun to slip, but the level of decline alleged is not so much that a reasonable person could say the slip means students have been altogether deprived of a basic education. Similarly, the absence of certain assessment mechanisms in Iowa, as alleged by the plaintiffs, does not establish the deprivation of basic education. Even Iowa’s decline in the national rankings in various subjects does not mean students are being deprived of basic education. Again, it merely shows we are beginning to slip or perhaps other states are beginning to improve. Finally, the broad allegations that Iowa has failed to establish standards, enforce standards, adopt effective teacher pay systems, and establish a delivery system are insufficient. Accepting all the allegations of the petition to be true, the deprivation of basic education cannot be established. There are simply no allegations that students in Iowa cannot read, write, communicate, or perform the other essential aspects of education. There are no allegations that capable students lack an understanding of mathematics, science, economics, government, or computer-based technology.
The petition does contain some statements generally indicting the public education system. For example, the petition states that “[m]any Iowa students are not prepared to enter the workforce or post-secondary education without additional training or remediation when they graduate from high school.” The petition also alleges the educational and accreditation standards of this state “do not ensure that all students” will be able to meet or exceed the future demands of society, be prepared for responsible citizenship, and be prepared for further learning and productive employment in the global economy. The petition also generally declares, “[A]n ineffective education will persist for school children throughout their lifetimes, affecting the rate and extent of their ability to be a responsible citizen, their ability to learn further, and their ability to achieve productive employment in a global economy.”
To the extent such claims are actually allegations of a petition, as opposed to hortatory calls to action, they relate to the level of a basic or adequate education. Wherever a basic or adequate education might land within the framework of our constitution, assuming the existence of a right to education, that landing point certainly would not guarantee that “all students” would be able to meet the broad demands of the world in the future. Nor would the right guarantee students would never need to take a remedial course to enter the workforce or postsecondary education.
*39 Of course, my rejection of the pleadings in the case as a basis to support a constitutional right necessarily leads to the question of what allegations would need to be pled to properly support the constitutional claim of a minimally sufficient public education. Assuming Justice Appel has articulated the source of a constitutional claim to a public education, the fighting issue turns to the meaning of a minimally sufficient education. This is an issue that is indeed difficult and one that I am admittedly without a specific answer at this time. We landed on a minimally sufficient standard in the context of the constitutional right to counsel, and this standard has worked well enough in applying the constitutional right. But, public education is a totally different kettle of fish. The point when a state’s educational system becomes minimally insufficient would be difficult to ascertain in the context of a constitutional analysis. Nevertheless, the analysis would need to generally center on the performance of the school system and its collective outcomes and be ultimately judged in relationship to other performance models over a period of years. But, for now, I am simply content that the allegations of the petition in this ease fall short and that a trial to obtain the supporting evidence would not help.
Additionally, the allegations of the petition, even if true, do not establish a violation of the equal protection clause. Even assuming the different educational outcomes alleged in the petition are supported by facts, a rational basis certainly could be articulated to justify the different outcomes. This rational basis is found in the local control given to school districts. Moreover, a rational basis to justify different outcomes does not need to be derived by courts from the record in a case. Importantly, similar to the way facts are assumed to support allegations in a petition to determine if a claim for relief has been stated, courts formulate a rational basis from any information that is “realistically conceivable.” Miller v. Boone Cnty. Hosp., 394 N.W.2d 776, 779 (Iowa 1986). Thus, when considering constitutional challenges subject to a rational-basis analysis, courts may consider the existence of any conceivable rational basis. The analysis does not require a factual basis drawn from the record in the case. Racing Ass’n of Cent. Iowa v. Fitzgerald, 675 N.W.2d 1, 7-8 & n. 4 (Iowa 2004). Accordingly, this analysis means courts are not required to needlessly wait for a trial before declaring that a particular different outcome in society does not violate the equal protection guarantee. Different outcomes from governmental actions can be observed throughout society, and they violate the equal protection clause only when government does not have an adequate justification for the different treatment. See Varnum v. Brien, 763 N.W.2d 862, 879 (Iowa 2009).
In the end, the allegations of the petition, while alarming, simply cannot support the constitutional claim that is urged. Consequently, the courts have no role in the resolution of this important social issue at this time. The petition, if true, may be a call to action, but it is a call under our constitutional structure for the legislature, not the courts. The pleadings simply do not convince me that school children today in Iowa, let alone the school children at the center of this lawsuit, are being deprived or have been deprived of any level of education our constitution would be able to mandate.